# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 33685

TAMARA L. O'CONNOR,

    Plaintiff-Appellant,

v.

HARGER CONSTRUCTION, INC., an Idaho corporation,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, March 2008 term

2008 Opinion No. 65

Filed: May 9, 2008

Stephen Kenyon, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. Charles Hosack.

The decision of the district court is <u>affirmed</u>. Attorney's fees and costs on appeal are awarded to respondent.

Layman, Layman & Robinson, PLLP, Coeur d'Alene, for appellant. Arthur M. Bistline argued.

Dean & Kolts, Coeur d'Alene, for respondent. Charles R. Dean, Jr. argued.

_____

W. JONES, Justice

This action arises out of the purchase of real property on Lake Coeur d'Alene, Idaho. Tamara O'Connor (O'Connor) filed an action again Harger Construction, Inc. (Harger), alleging breach of contract and seeking damages, or in the alternative, specific performance or restitution for the return of her deposit. The district court, Honorable Charles Hosack presiding, found that a mutual mistake of fact existed between O'Connor and Harger and that O'Connor had not met the burden of proving that Harger had breached the contract. On motion for reconsideration, filed by O'Connor, the trial court expressly ordered the contract rescinded and O'Connor's

1

deposit returned less an amount for construction materials in her possession. O'Connor appeals to this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Harger's business consists of purchasing lots with the intent of building a home on the lot and subsequently selling the lot as residential real estate. Harger typically finds a buyer for the home prior to building. Although the homes are in a sense custom, they also have general appeal so that Harger may find another buyer.

O'Connor and Harger entered into a Pre-Sold New Construction Real Estate Purchase and Sale Agreement and Receipt for Earnest Money on February 2, 2004 (the Purchase Agreement). At that time, O'Connor made a deposit of $500 towards the purchase of a custom-built home. The Purchase Agreement was contingent on approval of final construction plans and expressly did not transfer title of the land to O'Connor prior to closing. O'Connor and Harger entered into a contract establishing pricing for the construction of the home (Pricing Contract) on June 16, 2004. The Pricing Contract established a non-refundable deposit (the Deposit) of $40,000 and a final home price of $585,000. The Pricing Contract dealt primarily with construction costs, worker's compensation, landscaping and deposits corresponding with filing of building permits. It expressly states that Harger is the owner of the lot and that O'Connor and Harger are working to construct a home on the lot that is mutually acceptable to both parties. The $585,000 cost for construction was itemized, accounting for building material costs, realtor and closing fees, building fees and the cost of the lot. The price of the lot in the Pricing Contract was listed at $225,000. The Pricing Contract established that the home would be finished six months from issuance of the building permits, weather and site permitting. O'Connor paid the Deposit on July 22, 2004.

The lot was bordered by a private driveway on the neighboring property and a public street. In order to gain access from the public street Harger originally anticipated a two-story home. Originally, it was thought that a two-story home would provide the most cost-effective driveway. Harger negotiated with a buyer previously, and due to the difficulty in accessing the property from the public street the contract fell through. O'Connor informed Harger that she would be able to acquire an easement in the private driveway. There is testimony that the slope of the lot was such that a drive-way to a one-story home would have dramatically increased the

2

cost in the Pricing Contract. O'Connor and Harger decided to build a one-story home with an easement on the neighboring private driveway.

The Pricing Contract conditioned the price of $585,000 on excavation costs accounting for the use of the existing access road. The district court found that Harger knew that no easement on the private driveway existed at the time that the lot was purchased by Harger, and that O'Connor determined that an easement would be granted. The court further found that O'Connor made a representation to Harger that an easement on the private driveway could be obtained.

In September, Harger and O'Connor learned that the neighbors were unwilling to grant an easement on the private driveway. In late September or early October the parties learned that the footprint for the house was too large, and the house would need to be reduced by four feet in order to fit on the lot. It was at this point that any contemplated building was halted while O'Connor and Harger determined whether (1) access could be obtained through an easement (either by consent or through legal action), and (2) a variance would be granted in order to build the house as planned, or if the house should be redesigned.

Due to the delay in construction because of the problems with the easement on the private driveway and the variance, in April 2005, Harger sent O'Connor a letter offering to sell the land at the current market value ($319,000) or to rescind the contract and return her full deposit, purchasing the tiles (construction materials) in her possession. O'Connor filed the current action after receipt of the April 2005 letter.

The following issues are presented to this Court on appeal:

1. Whether the district court abused its discretion when it found that a mutual mistake of fact existed between O'Connor and Harger.
2. Whether the district court incorrectly placed the burden on O'Connor to disprove that a mistake of fact existed.
3. Whether the district court erred by not awarding O'Connor specific performance for the sale of the land.
4. Whether the district court erred when it granted an equitable remedy which was not plead by either party.
5. Whether the district court erred by granting rescission when Harger had not yet tendered O'Connor the return of her consideration.
6. Whether the district court abused its discretion when, as part of the rescission and return of O'Connor's deposit, the court ordered O'Connor to pay for construction materials that remained in her possession.
7. Whether Harger is entitled to attorney's fees on appeal.

STANDARD OF REVIEW

This Court exercises free review over questions of law. *Robinson v. State Farm Mut. Auto. Ins. Co.*, 137 Idaho 173, 176, 45 P.3d 829, 832 (2002). The imposition of equitable remedies is a question of fact because it requires the trial court to balance the equities of each party. *West Wood Inv., Inc. v. Acord*, 141 Idaho 75, 82, 106 P.3d 401, 408 (2005) (citing *Sword v. Sweet*, 140 Idaho 242, 92 P.3d 492 (2004)). Findings of fact by the trial court will not be overturned on appeal absent a showing that they are clearly erroneous and not supported by substantial and competent evidence. *West Wood Inv., Inc.*, 141 Idaho at 82, 106 P.3d at 408 (quoting *Conley v. Whittlesey*, 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999)). A trial court does not abuse its discretion if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason. *West Wood Inv., Inc.*, 141 Idaho at 82, 106 P.3d at 408 (citing *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 765, 86 P.3d 475, 482 (2004)).

**The district court did not err when if found a mutual mistake of fact existed between O'Connor and Harger**.

Rescission is an equitable remedy which ideally brings the parties to their pre-contract status quo. *Murr v. Selag Corp*, 113 Idaho 773, 777, 747 P.2d 1302, 1306 (Ct.App. 1987) (citing *Blinzler v. Andrews*, 94 Idaho 215, 485 P.2d 957 (1977), *overruled on other grounds*; *Barnard & Sons, Inc. v. Akins*, 109 Idaho 466, 708 P.2d 871 (1985)). It abrogates the contract and restores parties to their original position, as if the contract had never occurred. *Primary Health Network, Inc. v. State, Dep't of Admin.*, 137 Idaho 663, 668, 52 P.3d 307, 312 (2002). Rescission is the proper remedy where there is a mutual mistake of fact that is material or fundamental to the contract. *Murr*, 113 Idaho at 777, 747 P.2d at 1306 (citations omitted). "[M]utual mistake permits a party to rescind or modify a contract as long as the mistake is so substantial and fundamental as to defeat the object of that party." *Primary Health Network, Inc.*, 137 Idaho at 668, 52 P.3d at 312 (citing *United States v. Fowler*, 913 F.2d 1382 (9th Cir. 1990)).

The party alleging the mutual mistake of fact bears the burden of proof. *Murr*, 113 Idaho at 777, 747 P.2d at 1306; *Metro. Life Ins. Co. v. McClelland*, 57 Idaho 139, 144, 63 P.2d 657, 658 (1937). Whether a mutual mistake of fact exists is a finding of fact and will not be overturned unless it is clearly erroneous. *Cline v. Hoyle & Associates Ins., Inc.*, 108 Idaho 162,

164, 697 P.2d 1176, 1178 (1985) (citing *Ed Sparks & Sons v. Joe Campbell Constr. Co.*, 99 Idaho 139, 578 P.2d 681 (1978)). The mistake must be common to both parties, and must be proven by clear and convincing evidence. *Cline*, 108 Idaho at 164, 697 P.2d at 1178 (citations omitted).

Here, the district court found that both parties held the mistaken belief that access to the property could be granted by way of an easement on the private driveway. It cannot be said that the court's findings were not supported by substantial and competent evidence. O'Connor believed an easement would be granted, and when the easement was denied by the neighbors, she contacted an attorney to see if there was a legal claim to the easement. Harger relied on O'Connor's assertion that they would grant her an easement based on the neighbor and O'Connor's social relationship. The court found that O'Connor did not file any legal actions attempting to enforce her alleged rights in the easement. The Pricing Contract expressly states that the price of the home was conditioned on access through use of the easement on the private driveway. No easement existed; therefore, both parties mistakenly believed that the easement existed or would be granted. This Court finds that there was no error in the findings of the district court that a mutual mistake of fact occurred.

Additionally, there is no error in the district court's finding that the mistake was fundamental to the contract. Under the Pricing Contract, excavation costs were listed at $4,000. Harger presented testimony, which O'Connor did not rebut, that excavation costs to build a driveway to the home as planned would be in the $35,000 range, and costs to necessarily change the design to fit the road would be in the $100,000 range.

**The district court did not improperly place the burden on O'Connor to disprove that a mutual mistake of fact existed.**

The question of where a burden of proof lies is a question of law, over which this Court exercises free review. *Robinson*, 137 Idaho at 176, 45 P.3d at 832. The burden of proof for showing the existence of a contract and breach is on the plaintiff. *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 747, 9 P.3d 1204, 1213 (2000). Once the plaintiff has met that burden, the defendant has the burden of pleading and proving any affirmative defenses to enforcement of that contract. *Cogeneration, Inc.*, 134 Idaho at 747, 9 P.3d at 1213. O'Connor argues that the burden of disproving the mutual mistake was incorrectly placed on her. Here, O'Connor met the burden of proving that a contract existed. The burden was then on Harger to

5

show an affirmative defense to the enforcement of that contract. That is, Harger had the burden of proving that a mutual mistake of fact existed between the parties and that mutual mistake was fundamental to the original contract, making the original contract unenforceable. The court found that Harger met this burden. The burden was not improperly placed on O'Connor merely because the trial court found that Harger effectively proved that a mutual mistake of fact existed between the parties.

In her brief, O'Connor incorrectly states the findings of the district court. The district court did not find that the mutual mistake of fact existed as to whether a home could be built on the lot for the contracted price, but rather that the mutual mistake of fact was that an easement on the private driveway would be granted. The court then found that O'Connor had not effectively shown (i.e., had not overcome her burden of disproving the affirmative defense) that the original contract could be enforceable despite the mutual mistake of fact. That is, O'Connor was unable to show that the mutual mistake of fact (the easement on the private driveway) was not fundamental to the original contract of the parties. The district court did not improperly place the burden of disproving the mutual mistake of fact on O'Connor.

**The district court did not err by denying O'Connor the remedy of specific performance**.

It is within the discretion of the trial court to grant or deny a party specific performance. *Barnard & Sons, Inc.*, 109 Idaho at 469, 708 P.2d at 874. The district court found that it was never contemplated by Harger to sell only the lot for the price listed in the Pricing Contract ($225,000). Building the home was a condition precedent to the sale of the lot and a separate contract for sale of the lot only did not exist between the parties. Therefore, without a contract to specifically enforce, there was no relief for the court to grant. The relief that O'Connor seeks is that of reformation of the contract, and not specific performance.[1] She was seeking for the lower court to change the written language of the contract to eliminate the condition precedent of the building of the house. O'Connor neither argued, nor provided proof, that reformation is an available remedy or that the parties ever intended for there to be a separate land sales contract

---

[1] *Black's Law Dictionary*, 6th ed., defines reformation as "[a] court-ordered correction of a written instrument to cause it to reflect the true intentions of the parties. Equitable remedy used to reframe written contracts to reflect accurately real agreement between contracting parties when, either through mutual mistake or unilateral mistake coupled with actual or equitable fraud by other party, the writing does not embody contract as actually made."

6

not conditioned on building the house. O'Connor was asking the district court to fashion a remedy in which she purchases the lot without meeting the condition precedent.

On motion for reconsideration, the court clarified that O'Connor failed to show that there was a contract for the separate purchase of the lot without a home and that she did not meet her burden of proof that Harger could design and build a home for the contracted price ($585,000) by building a driveway with access from the public street directly. It cannot be said that the district court abused its discretion in denying O'Connor the relief of specific performance of the contract to sell the lot on the condition of building a home. The testimony showed that price was always a concern for O'Connor, and that the cost to build the driveway from the public street would increase the cost of the home by more than $100,000. This Court finds that no separate legally enforceable contract for the sale of the land existed between O'Connor and Harger and that the district court did not err when it did not specifically enforce a contract that never existed. Additionally, this Court finds that the district court did not abuse its discretion when it failed to specifically enforce the contract between the parties as it existed.

**The district court had the power to grant rescission as the equitable relief regardless if it was specifically plead by either party.**

I.R.C.P. 54(c) states that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." If the trial court grants relief not specifically plead by the parties, then the issue must be tried by express or implied consent of the parties. I.R.C.P. 15(b); *M.K. Transp., Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980). An issue must be tried by express or implied consent in order to give the parties notice and the opportunity to present evidence. *Grover*, 101 Idaho at 349, 612 P.2d at 1196.

Harger expressly plead in his answer that the contract was unenforceable based on mutual mistake of fact. Rescission is a remedy for mutual mistake of fact. *Murr*, 113 Idaho at 777, 747 P.2d at 1306. In the district court's memorandum decision and order on motion for reconsideration the court states "Harger agrees that the [c]ourt does have authority to grant rescission. . . . O'Connor continues to argue that Harger is not entitled to rescission, even though rescission was one of O'Connor's causes of action." The district court incorrectly states that rescission was one of O'Connor's causes of action. In O'Connor's complaint she makes a claim for restitution, but not for rescission.

However, the issue of mutual mistake was raised expressly in Harger's answer, and the remedy of rescission was impliedly tried by consent. In O'Connor's direct examination, O'Connor was questioned at length regarding the mistaken easement. She was given the opportunity to state why she thought the easement was feasible and any other forms of access to the property which were contemplated. O'Connor also gave lengthy testimony of her willingness to continue negotiations and enforcement of the original contract. O'Connor was on notice that rescission was a possible remedy even though it was not specifically plead. She was given the opportunity to try the issue of whether a mutual mistake of fact existed between the parties, in which one of the potential remedies is rescission. In any event, rescission is ironically in her favor since if the contract is simply held unenforceable she forfeits her $40,000 deposit, whereas if it is rescinded, she is entitled to a refund of her deposit. The district court had the power to grant rescission in this instance. This Court affirms that decision.

**The district court did not err by granting rescission prior to the return of O'Connor's consideration because the district court ordered the return of O'Connor's consideration.**

The district court, upon motion for reconsideration, clarified that rescission was granted and that O'Connor's deposit is to be returned minus the cost of materials that were in her possession.

O'Connor argues that Harger never offered to return her deposit; therefore, rescission as a remedy is not available to him. A party seeking to rescind a contract ordinarily must return any consideration or the benefit received by the rescinding party before the rescission is valid. *Robinson*, 137 Idaho at 181, 45 P.3d at 837. More than a mere offer of the deposit is required; the party must exhibit an actual intent and willingness to pay to constitute a valid tender. *Pollard Oil Co. v. Christenson*, 103 Idaho 110, 116, 645 P.2d 344, 350 (1982).

Here, Harger made O'Connor an offer in April of 2005, offering to sell the land or rescind the contract and return her deposit. O'Connor responded to the offer of rescission and the return of her deposit by filing the lawsuit for breach of contract. O'Connor argues that without the return of her deposit, rescission is an unavailable remedy for Harger. O'Connor is confusing the issues here. The district court did not rule that Harger made a valid rescission by offering to tender O'Connor's deposit. The district court ruled that rescission was the most equitable remedy between the parties. Whether Harger's April 2005 letter constitutes a valid

tender of O'Connor's deposit, and whether rescission as an equitable remedy is available are two separate issues. Once O'Connor filed suit for breach of contract against Harger, Harger was relieved of his duty to tender O'Connor's deposit, constituting a valid rescission, absent a court order. Whether Harger completed a valid tender, making rescission outside of court proper does nothing to reduce the equitable powers of the trial court. The district court, in this case was free to fashion an equitable remedy as it saw fit. Therefore it is not necessary for this Court to determine the sufficiency of Harger's tender in this case.

**The district court did not abuse its discretion when it reduced O'Connor's deposit by the amount of construction materials that remained in her possession**.

O'Connor presents no argument as to why this would be an abuse of discretion. There is no logical reason why O'Connor should be awarded building materials free of charge. By granting rescission, the court placed the parties as nearly as possible in the position they would have been in had the contract never occurred. By doing so, the court would necessarily need to decrease O'Connor's deposit for any building materials that are in her possession. O'Connor raises the argument that she should not have to pay for the building materials but does not advance an argument or cite authority. This Court affirms the decision of the district court to reduce O'Connor's deposit for the amount of the building materials that she possesses.

**Whether Harger is entitled to attorney's fees on appeal**.

Harger requests attorney's fees and costs on appeal pursuant to the contract. A party may be entitled to attorney's fees under a contract even if it is established that no contract between the parties ever existed. *Garner v. Bartschi*, 139 Idaho 430, 439, 80 P.3d 1031, 1040 (2003); *Ayotte v. Redmon*, 110 Idaho 726, 728, 718 P.2d 1164, 1166 (1986) (finding that an award of attorney's fees under a contractual provision are proper in an action for rescission of the contract). Section 29 of the Purchase Agreement awards reasonable costs and attorney's fees to the prevailing party for any legal action brought or defended in connection with the Purchase Agreement. Even though the contract was unenforceable, it was a contract and had a severability clause, so the attorney fee provision is capable of enforcement. As the prevailing party on appeal, Harger is entitled to reasonable costs and attorney's fees in accordance with the Purchase Agreement.

For the foregoing reasons, this Court affirms the district court's order rescinding the contract between Harger and O'Connor, with a return of O'Connor's deposit less the cost of

9

construction materials in her possession.  Attorney's fees and costs on appeal awarded to Harger.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON, **CONCUR.**