**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 41990

CHARLES W. HOUPT, and GAIL N. HOUPT, husband and wife, )

   Plaintiffs-Appellants, )

v. )

WELLS FARGO BANK, NATIONAL ASSOCIATION, a California corporation, )

   Defendant-Respondent, )

and )

FIRST AMERICAN TITLE COMPANY, an Idaho corporation, )

   Defendant, )

and )

S.R.C. CORPORATION, d/b/a STEVE REGAN CO.; BEARD ST. CLAIR GAFFNEY, PA; UNITED STATE OF AMERICA, )

   Intervenors. )

Twin Falls, November 2015

2016 Opinion No. 28

Filed: March 9, 2016

Stephen W. Kenyon, Clerk

SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION DATED DECEMBER 29, 2015, IS HEREBY WITHDRAWN.

---

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Dane H. Watkins, Jr., District Judge.

District court judgment, affirmed in part, vacated in part, and remanded.

Peterson Moss Hall & Olsen, Idaho Falls, for appellants. Nathan M. Olsen argued.

Perry Law, P.C., Boise, for respondent. Trevor L. Hart argued.

---

BURDICK, Justice

    Charles and Gail Houpt (Houpts) appeal the Bonneville County district court's grant of summary judgment in favor of Wells Fargo Bank National Association (Wells Fargo Bank) and

1

First American Title Company (FATCO). In district court Houpts argued that Wells Fargo Bank was not legally entitled to foreclose on property owned by Houpts and that damages were appropriate due to Wells Fargo Bank and FATCO's (collectively Wells Fargo) wrongful foreclosure action. The district court found that because no foreclosure sale had occurred, Wells Fargo was entitled to summary judgment as a matter of law. After denying Houpts' request for reconsideration, the district court entered judgment in favor of Wells Fargo and awarded attorney fees and costs. Houpts appeal. We affirm in part, vacate in part, and remand.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from a dispute regarding property owned by Houpts located at 1954 N. Yellowstone Highway, Idaho Falls, Idaho (Property). In March 1993, Houpts executed a promissory note to the American Bank of Commerce (Note). As security on the Note, Houpts granted a deed of trust in the Property to American Bank of Commerce, as beneficiary, and FATCO, as Trustee (Deed of Trust).[1] Thereafter, over a period of time spanning from 1994 to 2004, American Bank of Commerce went through a series of mergers and transactions that resulted in Wells Fargo Bank obtaining the obligation owing under the Note and secured by the Deed of Trust.[2] However, a written assignment of the Note and Deed of Trust designating Wells Fargo Bank as the beneficiary of such was not filed during this time.

Starting in November 2007, Houpts failed to make numerous payments on the Note and ceased all payments beginning November 10, 2009. Consequently, Wells Fargo Bank directed FATCO to foreclose on the Property and on October 18, 2010, FATCO filed a Notice of Trustee's Sale listing American Bank of Commerce as the current beneficiary and setting the date of the sale for February 17, 2011. The day before the scheduled trustee's sale, Houpts filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Idaho. A year later Wells Fargo Bank was granted stay relief by the bankruptcy court and resumed foreclosure on the Property. Thereafter, on March 15, 2012, FATCO filed a new Notice of Trustee's Sale, stating, "Beneficial Interest is now held by Wells Fargo Bank, National Association, by merger agreement dated February 5, 2004." The date of the new sale was set for July 17, 2012.

---

[1] The amount of the original Note was subsequently modified but the general terms remained the same. The Deed of Trust was also subsequently modified to reflect the change in the amount due under the Note.

[2] In July 1994, American Bank of Commerce merged into First Security Bank. Then in April 2001, First Security changed its name to Wells Fargo Bank Northwest and in February 2004, Wells Fargo Bank NA purchased most of the assets and liabilities of Wells Fargo Northwest, including the Note and Deed of Trust.

On June 22, 2012, Houpts filed a Complaint and Motion for Preliminary Injunction stating that: (1) Wells Fargo Bank was not the beneficiary or other real party in interest of the Deed of Trust, and as such, Wells Fargo improperly initiated a nonjudicial foreclosure under I.C. § 45-1505; (2) the district court should grant a preliminary injunction to stop the foreclosure sale; and (3) Wells Fargo's actions constituted wrongful foreclosure. Wells Fargo answered by denying all claims made by Houpts and arguing that Wells Fargo Bank was the beneficiary of the Deed of Trust through merger and consolidation and, therefore, was exempted under 12 U.S.C. § 215(a) from being required to record a written assignment of the Deed of Trust prior to exercising its power of sale. Notwithstanding this argument, Wells Fargo Bank obtained a written assignment of the Note and Deed of Trust from Wells Fargo Northwest on August 24, 2012, and recorded the assignment with Bonneville County on September 4, 2012. Subsequently, on September 17, 2012, the district court, noting that Wells Fargo had recorded its assignment of the Deed of Trust, denied Houpts' motion for preliminary injunction but left open the possibility that Wells Fargo had committed a wrongful foreclosure.

Wells Fargo thereafter resumed foreclosure proceedings on the Property, but systematically postponed the sale in thirty day increments for various reasons. Then, on April 18, 2013, the bankruptcy court entered an order abandoning the Property as part of the bankruptcy estate, and two months later Houpts found a buyer for the Property outside of the foreclosure proceedings. The parties then filed a stipulation to accommodate the sale providing that Houpts could sell the property, distribute $19,156.65 of the proceeds to Wells Fargo Bank to reimburse for property tax payments, and deposit the remaining $139,500.45 with the Clerk of the Court to be distributed "according to the resolution of the priorities of valid liens or other considerations" (Stipulated Sale).[3]

The Stipulated Sale was completed, and on September 23, 2013, Wells Fargo moved for summary judgment arguing that Houpts' claims were mooted by completion of the Stipulated Sale. Two days later Houpts' bankruptcy case closed, and on November 12, 2013, Houpts filed a cross-motion for partial summary judgment requesting the district court to find that Wells Fargo Bank was not a named or successor beneficiary under the Deed of Trust and that Wells Fargo was liable for wrongful foreclosure. In reply, Wells Fargo argued that in addition to mootness,

---

[3] The Stipulated Sale also allowed for other creditors (not parties to this appeal) to intervene and assert their rights in the proceeds.

Houpts lacked standing to bring suit, and that under the doctrine of judicial estoppel, Houpts' claims should fail because Houpts failed to list their claims as assets on their bankruptcy schedules.

On January 7, 2014, the district court granted Wells Fargo's motion for summary judgment. The court ruled that Houpts' claims were moot because: (1) Wells Fargo Bank had recorded a written assignment of the beneficiary's interest in the deed of trust; and (2) Houpts voluntarily sold the Property outside the foreclosure proceedings. The parties then both filed cross-motions for reconsideration. Houpts argued that the district court erred in granting Wells Fargo summary judgment and that Wells Fargo had violated Idaho Code section 6-101. Wells Fargo argued that section 6-101 did not apply to nonjudicial foreclosures and asked for a ruling on the issues of judicial estoppel and standing.

The district court ruled in favor of Wells Fargo. In making its ruling the district court: (1) reiterated that Houpts' claims were moot because of the Stipulated Sale; (2) ruled that section 6-101 did not prevent Wells Fargo from recovering; and (3) found that judicial estoppel prevented Houpts from pursing their claims. The court then ordered the proceeds of the sale of the Property to be paid to Wells Fargo and, after making certain deductions, awarded costs and attorney fees to Wells Fargo. Houpts timely filed a notice of appeal.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, and apply the same standard used by the district court in ruling on the motion. *Grazer v. Jones*, 154 Idaho 58, 64, 294 P.3d 184, 190 (2013). Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). All reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party, and disputed facts are liberally construed in the nonmoving party's favor. *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008). If reasonable people could reach different conclusions or inferences from the evidence, summary judgment is inappropriate. *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 238, 108 P.3d 380, 385 (2005).

An award of attorney fees is a factual determination which is reviewed for abuse of discretion. *Smith v. Mitton*, 140 Idaho 893, 901, 104 P.3d 367, 375 (2004).

4

### III. ANALYSIS

On appeal, Houpts argue that the district court committed error in granting summary judgment because: (1) the district court lacked jurisdiction to award Wells Fargo the proceeds from the Stipulated Sale; (2) Wells Fargo Bank was not the recorded beneficiary of the Deed of Trust when the foreclosure was first initiated, and therefore committed wrongful foreclosure; and (3) Houpts' separate claims against FATCO were never addressed. Houpts further allege that Wells Fargo should not have been awarded attorney fees and costs. Wells Fargo argues that Houpts lack standing to bring their claims and that the district court did not err in granting summary judgment or attorney fees and costs. We address each claim in turn.

### A. Jurisdiction and Standing Arguments

#### 1. Houpts have Standing

Wells Fargo argues that even though the district court did not consider the issue, this Court may affirm the district court's rulings on the ground that Houpts lack standing as the real party of interest. Houpts contend that since this argument is raised for the first time on appeal it should not be considered. We note that although Wells Fargo raised the issue of standing during the trial court proceedings it was never ruled on by the district court. "To raise an issue on appeal, the record must contain an adverse ruling to form the basis for assignment of error . . . ." *State v. Hoyle*, 140 Idaho 679, 687 99 P.3d 1069, 1077 (2004) (citation omitted) (quotation marks omitted). However, issues of standing are jurisdictional, and "they can be raised at any time, including for the first time on appeal." *Id.* Indeed, "this Court has a duty to raise the issue of standing *sua sponte*." *Campbell v. Parkway Surgery Center, LLC*, 158 Idaho 957, 962, 354 P.3d 1172, 1177 (2015). Thus, we will consider the merits of Wells Fargo's contention that Houpts lack standing as the real party in interest.

Idaho's real party in interest rule is found in the Idaho Rules of Civil Procedure and states in relevant part:

> Every action shall be prosecuted in the name of the real party in interest. . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

I.R.C.P. 17(a). The purpose of this rule is to "prevent forfeiture when determination of the proper party is difficult or when an understandable mistake has been made in selecting the party plaintiff." *Conda Partnership, Inc. v. M.D. Constr. Co.*, 115 Idaho 902, 904, 771 P.2d 920, 922 (Ct. App. 1989). Consequently, when interpreting this rule we have stated that "[l]iberal construction should be given to this rule and courts should 'further the policy favoring the just resolution of actions— providing litigants their day in court.' " *Hayward v. Valley Vista Care Corp.*, 136 Idaho 342, 348, 33 P.3d 816, 822 (2001) (quoting *Conda*, 115 Idaho at 904, 771 P.2d at 922).

Wells Fargo contends that once Houpts filed their bankruptcy petition in 2011, any claim Houpts had automatically became an asset of the bankruptcy estate that only the trustee could assert. In support of their argument Wells Fargo relies on *McCallister v. Dixon*, 154 Idaho 891, 303 P.3d 578 (2013), and *Mowrey v. Chevron Pipe Line Co.*, 155 Idaho 629, 315 P.3d 817 (2013). In *McCallister* and *Mowrey*, the plaintiffs did not list their claims for damages in their bankruptcy schedules and then later, after their bankruptcy proceedings closed, attempted to bring suit. This Court ruled that the plaintiffs in both cases were judicially estopped from bringing their undisclosed claims and that the bankruptcy trustees, and not the plaintiffs, were the real parties in interest. We noted in *McCallister* that "once [the plaintiff] filed for bankruptcy, the potential [ ] claim he had against Respondents was no longer [the plaintiff's] to assert. It became an asset of the bankruptcy estate for the bankruptcy trustee to assert." 154 Idaho at 898, 303 P.3d at 585. In *Mowrey*, we stated that when a plaintiff has knowledge of a claim during the pendency of his bankruptcy the claim becomes "an asset of the bankruptcy estate, and [] a claim for the bankruptcy trustee alone to assert." 155 Idaho at 635, 315 P.3d at 823.

Here, like the plaintiffs in *McCallister* and *Mowrey*, Houpts had knowledge of their claims against Wells Fargo during the pendency of their bankruptcy.[4] Thus, Houpts were not the real party in interest at the time they filed their Complaint. But, because the issue of Houpts' standing as the real party in interest has not been ruled on until this time, under I.R.C.P. 17(a), the action cannot be dismissed until a reasonable time has been allowed for the Houpts to cure the defect through "ratification . . . by, or joinder or substitution of," the real party in interest. Accordingly, under I.R.C.P. 17(a), Houpts must be allowed the opportunity to cure any defect in the real party of

---

[4] Wells Fargo initiated the nonjudicial foreclosure proceedings on October 18, 2010. Houpts filed their bankruptcy schedules and amended schedules on February 16, 2011, and April 1, 2011, respectively. Houpts filed their Complaint in this action on June 22, 2012. The bankruptcy case closed on September 25, 2013. Based on these facts, Houpts had knowledge of their claims against Wells Fargo during the pendency of the bankruptcy proceedings, and no later than June 22, 2012, when they filed their Complaint.

interest. Yet, here, unlike in *McCallister* and *Mowrey*, the bankruptcy trustee has, since the original filing of the Complaint, specifically abandoned his interest in the property. Consequently, Houpts, unlike the plaintiffs in *McCallister* and *Mowrey* where the bankruptcy estates did not abandon their interests in the plaintiffs' claims, are now, in fact, the real party in interest and any such attempted cure would only result in Houpts seeking "ratification . . . by, or joinder or substitution of," themselves.

Therefore, even though Houpts may not have been the real party in interest at the time of filing—they are now. Requiring Houpts to start over would only result in needless waste. *See, e.g.*, *Mullaney v. Anderson*, 342 U.S. 415, 417 (1952) ("To dismiss the present petition and require the [] plaintiffs to start over in the District Court would entail needless waste and runs counter to effective judicial administration—the more so since, with the silent concurrence of the defendant, the original plaintiffs were deemed proper parties below."); *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 836–37 (1989) ("[R]equiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention. Appellate-level amendments to correct jurisdictional defects may not be the most intellectually satisfying approach to the spoiler problem, but, as Judge Posner eloquently noted, because 'law is an instrument of governance rather than a hymn to intellectual beauty, some consideration must be given to practicalities.' " (citation omitted) (quoting *Newman–Green, Inc. v. Alfonzo–Larrain*, 854 F.2d 916, 925 (7th Cir. 1988))). Accordingly, in the interest of judicial economy and our policy favoring "the just resolution of actions [by] providing litigants their day in court" we allow Houpts' claims to proceed.

**2. The District Court had Jurisdiction to Award Wells Fargo the Proceeds of the Stipulated Sale**

Houpts argue that under Idaho Code section 6-101 Wells Fargo should not have been allowed to collect on its lien without first "exhausting the security." Further, Houpts argue that they did not give implied or express consent for the court to distribute the funds from the Stipulated Sale to Wells Fargo. The district court ruled that Idaho Code section 6-101 was inapplicable and that Houpts gave at least implied consent for the district court to distribute the proceeds of the Stipulated Sale. We agree with the district court.

a. Idaho Code section 6-101

Often referred to as the "one action" rule, Idaho Code section 6-101(1) states that "there can be but one action for the recovery of any debt, or the enforcement of any right secured by

7

mortgage upon real estate . . . ." However, Idaho Code section 6-101(3) explicitly states that for the purposes of section 6-101:

> [A]n "action" does not include any of the following acts or proceedings:
>
> . . . .
>
> (e) For the exercise, pursuant to section 45-1505, Idaho Code, of a power of sale conferred pursuant to section 45-1503, Idaho Code;
>
> . . . .
>
> (k) Relating to any proceeding in bankruptcy . . . ;

I.C. § 6-101(3).

Here, the Property was subject to a bankruptcy proceeding and a nonjudicial foreclosure under Idaho Code section 45-1505. Both actions are specifically exempt from the "one action" rule under Idaho Code section 6-101. Houpts' argument in this regard is without merit.

b. Implied or express consent

Houpts maintain that because Wells Fargo did not plead or ask the Court to enter a money judgment in its favor and because Houpts did not consent to the district court deciding Wells Fargo's lien interest, the district court did not have the authority to distribute the proceeds from the Stipulated Sale to Wells Fargo.

However, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." I.R.C.P. 54(c). Yet, "[i]f the trial court grants relief not specifically [pled] by the parties, then the issue must be tried by express or implied consent of the parties." *O'Connor v. Harger Const. Inc.*, 145 Idaho 904, 911, 188 P.3d 846, 853 (2008) (citing I.R.C.P. 15(b); *M.K. Transp., Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980)).

Here, the provisions of the Stipulated Sale specifically state in paragraph 16(b) that proceeds from the sale "deposited with the Court pursuant to IRCP 67 . . . , shall be distributed by the Court pursuant to the rule by order of the court as according to the resolution of the priorities of valid liens or other considerations . . . ." This is clearly consent for the district court to disburse the proceeds of the Stipulated Sale in accordance with its rulings. Houpts' argument to the contrary is dismissed.

**B. Whether the District Court's Grant of Summary Judgment was Proper**

In its rulings the district court found that Houpts' claim for wrongful foreclosure was moot by reason of the Stipulated Sale and alternatively by the doctrine of judicial estoppel. The district court then determined the amount owing under the Note, awarded attorney fees and costs, and ordered the proceeds from the Stipulated Sale to be distributed to Wells Fargo. We agree with the district court that Houpts' claims fail, but diverge with the district court's rulings regarding the amount owing under the Note and the award of attorney fees and costs.

**1. Houpts' Claims for Relief Fail for Mootness**

On appeal, Houpts contend that the district court erred by granting summary judgment to Wells Fargo because: (1) evidence showed that Wells Fargo Bank was not the beneficiary of the Deed of Trust at the time FATCO issued the Trustee's Notice(s) of Sale and as a result, Houpts' claim for declaratory relief and request for an injunction were not moot; (2) evidence showed that Wells Fargo was liable for wrongful foreclosure; and (3) the district court did not address Houpts' individual claims against FATCO for breach of fiduciary duty. In reply, Wells Fargo argues that the district court did not err in declaring Houpts' claims as moot.

A claim for relief becomes moot when an appellant no longer has a legal interest in the outcome. *State v. Hoyle*, 140 Idaho 679, 682, 99 P.3d 1069, 1072 (2004) (citing *Murphy v. Hunt*, 455 U.S. 478, 481–82 (1982)). "Mootness [] applies when a favorable judicial decision would not result in any relief. This Court may only review cases in which a judicial determination will have a practical effect on the outcome." *Fenn v. Noah*, 142 Idaho 775, 779, 133 P.3d 1240, 1244 (2006) (citations omitted).

a. Houpts' claims for declaratory and injunctive relief

Houpts argue that the district court erred by declaring that their claims for declaratory and injunctive relief were moot because there was evidence showing that Wells Fargo Bank was not the beneficiary of the Deed of Trust at the time the foreclosure sale was initiated. However, Houpts' prayer for relief did not request an order regarding Wells Fargo Bank's beneficiary status at the time the foreclosure was initiated, but rather requested an order declaring that Wells Fargo Bank presently "is not the beneficiary under the Deed of Trust and has no beneficial interest in the Property." Houpts filed for summary judgment on November 12, 2013. A notice of assignment of the beneficiary interest from Wells Fargo Northwest to Wells Fargo Bank was recorded over a year earlier on September 4, 2012. Thus, at the time Houpts filed their motion

9

for summary judgment Wells Fargo Bank was in fact the beneficiary under the Deed of Trust and the district court could not enter an order declaring that Wells Fargo Bank was not presently the beneficiary and had no interest in the property. Similarly, the voluntary Stipulated Sale occurred in June 2013—also before Houpts filed for summary judgment—and as a result, there was no longer any foreclosure proceeding for the district court to stay. The district court was correct in ruling these two claims moot. *State v. Rogers*, 140 Idaho 223, 227, 91 P.3d 1127, 1131 (2004) ("[W]hen the issues presented are no longer live, the issues are moot and preclude review.").

b. Houpts' claim for damages due to wrongful foreclosure

Houpts maintain that because Wells Fargo Bank was not the recorded beneficiary of the Deed of Trust at the time it initiated the foreclosure Wells Fargo committed wrongful foreclosure, or at least attempted wrongful foreclosure, and is liable for damages. We disagree.

Under Idaho law, a wrongful foreclosure action is equated with a cause of action for conversion. *Williamson v. Ysursa*, 78 Idaho 423, 430, 305 P.2d 732, 736 (1956) ("Where a chattel mortgage is foreclosed by summary proceedings, and the requisite procedure is not complied with in material particulars . . . such action constitutes a conversion . . . ."); *Peterson v. Hailey Nat'l Bank*, 51 Idaho 427, 431, 6 P.2d 145, 147 (1931) ("The mortgagee cannot lawfully seize mortgaged property in any other manner than that provided by [statute] and when he sells it in any other manner than that directed by statute 'he is guilty of conversion, and becomes liable to the mortgagor the same as anyone else who converts property to his own use.' " (quoting *Marchand v. Ronaghan*, 9 Idaho 95, 98, 72 P. 731, 732 (1903))). Conversion, in turn, requires a distinct act of wrongfully asserted dominion over another's personal property, *see Luzar v. Western Sur. Co.*, 107 Idaho 693, 696, 692 P.2d 337, 340 (1984), and a cause of action for conversion "accrues in favor of the owner of property as soon as the property is wrongfully taken from his possession or wrongfully converted." *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 743, 979 P.2d 605, 616 (1999). Title to property in a nonjudicial foreclosure action is not "taken" until the conclusion of the sale. *See Roos v. Belcher*, 79 Idaho 473, 482, 321 P.2d 210, 215 (1958) (holding that a properly conducted nonjudicial foreclosure sale quiets title in the purchaser).

Thus, while we recognize that a few jurisdictions recognize a cause of action for attempted wrongful foreclosure, *see, e.g.*, *Sale City Peanut & Milling Co., Inc. v. Planters & Citizens Bank*, 130 S.E.2d 518 (Ga. App. 1963) (allowing a cause of action when borrowers

10

alleged that lender knowingly published an untrue and derogatory statement about borrowers' financial condition and that damages resulted, even though no foreclosure sale took place), we hold that under Idaho law, a cause of action for attempted wrongful foreclosure does not exist and that an action for wrongful foreclosure does not accrue until after a foreclosure sale is completed and title is "taken" by the purchaser. Such a holding is not only consistent with our precedent of equating wrongful foreclosure with conversion but also the jurisprudence of the majority of our sister states. *See, e.g.*, *Worrall v. Federal Nat'l Mortg. Ass'n*, No. 13-cv-330-JD, 2013 WL 6095119, at *3 (D.N.H. Nov. 20, 2013) ("[A] necessary element of a wrongful foreclosure claim, as the claim suggests, is that a foreclosure sale must have occurred."); *Subramaniam v. Beal*, No. 3:12-cv-1681-MO, 2013 WL 5462339, at *3 (D. Or. Sept. 27, 2013) ("Oregon does not recognize a cause of action for wrongful attempted foreclosure, so [plaintiff's] allegation that a potentially wrongful foreclosure was threatened or attempted does not give rise to a cause of action."); *Medrano v. BAC Home Loans Servicing, LP*, No. 3:10-cv-02565-M(BF), 2012 WL 4174890, at *3 (N.D. Tex. Aug. 10, 2012) ("An attempted wrongful foreclosure is not an action recognized under Texas law."); *Reese v. First Missouri Bank and Trust Co. of Creve Coeur*, 736 S.W.2d 371, 373 (Mo. 1987) ("[T]here is no cause of action for attempted wrongful foreclosure . . . ."); *McKinley v. Lamar Bank*, 919 So.2d 918, 930 (Miss. 2005) ("There was no wrongful foreclosure because there was never a foreclosure at all."); 55 AM. JUR. 2D *Mortgages* § 451 ("There is no cause of action for an attempted wrongful foreclosure.").

Here, when interpreting the facts in the light most favorable to Houpts, the facts tend to show that: (1) Wells Fargo Bank was not the recorded beneficiary of the Deed of Trust when FATCO issued its Trustee's Notice(s) of Sale; (2) Wells Fargo Bank became the recorded beneficiary in September 2012; (3) in June 2013, the parties filed a voluntary Stipulated Sale agreement to sell the Property to a third-party; (4) the Property was in fact sold to a third party; and (5) a foreclosure sale never occurred. Given these facts Houpts have no cause of action for wrongful foreclosure because a foreclosure sale never occurred. Houpts' potential claim for wrongful foreclosure was extinguished by operation of the voluntary Stipulated Sale.

c. Houpts' individual claim against FATCO

Houpts argue that FATCO is independently liable for damages by violating a fiduciary duty to accurately verify or state the beneficiary on the Trustee's Notice(s) of Sale. This Court has held that, "pursuant to I.C. § 45-1505, a trustee may initiate nonjudicial foreclosure

11

proceedings on a deed of trust without first proving ownership of the underlying note or demonstrating that the deed of trust beneficiary has requested or authorized the trustee to initiate those proceedings." *Trotter v. Bank of New York Mellon*, 152 Idaho 842, 847, 275 P.3d 857, 862 (2012). Accordingly, FATCO was under no obligation to determine who owned the Note or even whether the beneficiary, whoever it may have been, authorized the foreclosure. This argument is without merit.

Finally, Houpts argue that, even if moot, their claims should be preserved by the language of the Stipulated Sale agreement. Paragraph 16(c) of the Stipulated Sale agreement states: "That such deposit of proceeds to the Court and releasing of liens not be construed as a waiving of any claims, rights or allegations, or an admission of any kind by any of the Parties against each other or pertaining to the above described action." However, as the district court points out, while the provision may preserve any cause of action Houpts might have had, it does not create a cause of action that is not supported by law—and since Houpts' claims, for the reasons discussed above, are not supported in the law, the provision is of no avail to them.

Since we find that Houpts' claims fail for the reasons above we do not reach the judicial estoppel argument put forth by Wells Fargo and move to the issue of the loan balance and attorney fees and costs.

**2. Calculating the Principal and Interest on the Loan and Attorney Fees and Costs**

Houpts argue that the district court erred in calculating the principal and interest of the loan and in calculating the amount of attorney fees and costs awarded to Wells Fargo. We agree.

a. Calculating the principal and interest of the loan

Houpts make three main arguments on this point. First, Houpts claim that a $100,000 payment made on the note was never determined to be either prepayment or advanced payments of the installments due under the note. Second, Houpts claim that the district court improperly disregarded evidence that the Small Business Administration (SBA) made a guarantee payment on the Houpts' loan secured by the Note and Deed of Trust. Finally, Houpts maintain that there is a question of material fact relating to the date of default on the loan that would affect the principal and interest amounts due. We address each contention in turn.

i. The $100,000 payment

Houpts maintain that a $100,000 payment made in May 2006 was not properly accounted for by Wells Fargo in its calculation of the loan principal and interest. Specifically, Houpts cite

to the provision in the Note which reads: "Borrower shall provide lender with written notice of intent to prepay part or all of this loan at least three (3) weeks prior to the anticipated prepayment date. A prepayment is any payment made ahead of schedule that exceeds twenty (20) percent of the then outstanding principal balance." They argue that this provision required a written agreement as to how the payment would be applied to the loan and that no such agreement was reached. Houpts also state that they understood that the $100,000 payment would release the collateral on their personal residence and result in a reduction of the monthly payment on the Note.

Houpts' argument that a written agreement was required as to how the payment would be applied is not supported by the terms of the Note. The provision Houpts cite in support of their argument only requires notice of payment, it does not require an agreement about how such a payment would be applied. In fact, the provision continues: "If borrower makes a prepayment and fails to give at least three weeks advance notice of intent to prepay, then, notwithstanding any other provisions to the contrary in this note or other document, borrower shall be required to pay lender three weeks interest on the unpaid principal as of the date preceding such prepayment." Additionally, the Note clearly states that payments will be applied first to interest and then to principal and that the holder may increase or decrease the amount of the monthly installment payments "to assure such payments will amortize the Note within the bounds of the stated maturity." Thus, if Houpts wanted the payment to be applied differently than dictated by the Note, it was Houpts' duty as the borrower to notify Wells Fargo Bank—not Wells Fargo Bank's duty to seek direction from Houpts.

Furthermore, after examining the record it is clear that the $100,000 payment was in fact applied according to Houpts' understanding. The affidavit of Gary Glorfield, Vice President and custodian of records for Wells Fargo Bank, includes a record of the loan showing that the $100,000 payment was made on May 2, 2006, attributing $99,944.75 to principal and $55.25 to interest. The record of payments also shows that the monthly payments were reduced after the $100,000 payment from approximately $1000 a month to $800. Additionally, the affidavit includes a copy of a letter between Wells Fargo Bank and Mr. Houpt regarding the $100,000 payment and the release of the Houpts' residence for the payment. It also includes a copy of the reconveyance of the Houpts' personal residence.

Houpts' contention that this payment was not properly accounted for is dismissed.

13

ii. The SBA guarantee payment

Houpts claim that in May 2010, Wells Fargo received a pre-liquidation payment from the SBA in the amount of $56,240.50. They further claim that this amount was not properly accounted for in determining the principal or interest due on the Note. In support of this claim Houpts proffered various documents obtained from the SBA through a Freedom of Information Act (FOIA) request. In its Memorandum Decision and Order Re: Motions for Reconsideration the district court struck the evidence obtained through the FOIA request stating: "Although this Court is sensitive to the potential question of fact such a guaranty could have on the loan's interest calculations, the documents themselves, as introduced by [Counsel], are hearsay . . . ." The district court went on to say: "[The district court] is not aware of, and Interveners have not indicated, anywhere else in the record where evidence of the SBA guaranty payment is provided."

On appeal, Houpts argue that the documents obtained through the FOIA should have been admitted under I.R.E. § 803(8) as a public record. Documents recovered through a FOIA request, however, are not a "public record" as construed under 803(8) because such documents are not the result of an "agency setting forth its regularly conducted and regularly recorded activities," I.R.E. § 803(8), but are the result of a specific request for production. 5 U.S.C. § 552(a)(3)(A). However, counsel for Wells Fargo admitted in its Answers to Plaintiffs' First Request for Admission that Wells Fargo Bank did receive a payment from the SBA in the amount of $56,240.56 for the Note.[5] The admission is dated August 20, 2013, which is before both the summary judgment and motion to reconsider orders were entered, and would be admissible as evidence to show that the SBA payment was made.

We are, as the district court itself was, "sensitive to the potential questions of fact such a guaranty could have on the loan's interest calculations," and remand for a determination of what effect, if any, the SBA payment has on the interest and balance due under the Note.

iii. The date of default

Houpts presented evidence that shows that Wells Fargo alleged three different dates of default: July 1, 2009, as according to the SBA's records; November 8, 2009, as according to the 2011 Notice of Trustee's Sale; and March 8, 2009, as according to the 2012 Notice of Trustee's

---

[5] Counsel for Wells Fargo also openly acknowledged in oral argument before this Court that such a payment was received and simultaneously admitted that there was no indication in the record what effect, if any, the payment would have on the interest and balance of the note.

14

Sale. Houpts argue that depending on which date is accurate the amount owed in interest and, consequently, the balance due on the Note will be affected.

It does not appear that the district court made any rulings or findings regarding the date of default or the effect, if any, it would have on the interest and ultimate balance due on the Note. Given the questions of fact surrounding the date of default we remand to the district court to determine the date of default and what effect, if any, the date has on the interest and balance due under the Note.

b. <u>The award of attorney fees and costs by the district court</u>

Houpts argue that the district court erred in awarding attorney fees because Wells Fargo was not the prevailing party. Further, Houpts maintain that even if Wells Fargo was the prevailing party they should not be able to collect fees and costs for actions taken before they became the recorded beneficiary of the Deed of Trust and that the time Wells Fargo alleges was spent on litigation far exceeds the "time and labor required" under I.R.C.P. § 54(e)(3).

i. <u>The prevailing party</u>

Houpts maintain that Wells Fargo should not be deemed the prevailing party because Wells Fargo only "prevailed" due to Houpts' voluntary stipulation to sell the property. This Court set out the standard of review when determining the prevailing party in *Bream v. Benscoter*, 139 Idaho 364, 368, 79 P.3d 723, 727 (2003):

> The determination of who is a prevailing party is committed to the sound discretion of the trial court, and we will not disturb that determination absent an abuse of discretion. *Bolger v. Lance*, 137 Idaho 792, 53 P.3d 1211 (2002). To prove an abuse of discretion, this Court applies the three-factor test. The three factors are: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Fox v. Mountain West Elec., Inc.*, 137 Idaho 703, 52 P.3d 848 (2002).

Here the district court: (1) noted that Rule 54(d)(1) commits the determination of prevailing parties to the sound discretion of the trial court; (2) noted that Houpts' Complaint against Wells Fargo was dismissed in its entirety and that Wells Fargo obtained the most favorable outcome it could achieve; and (3) relying on those observations exercised its reason by concluding that Wells Fargo was the prevailing party.

Given the district court's application of these factors, we find no reason to disturb the district court's finding that Wells Fargo was the prevailing party because Wells Fargo obtained "the most favorable outcome that could possibly be achieved." *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 719, 117 P.3d 130, 133 (2005) (noting that the prevailing parties were those that obtained "the most favorable outcome that could possibly be achieved").

### ii. Amount of the award for attorney fees and costs

Houpts argue that the district court abused its discretion in determining the amount of fees and costs awarded to Wells Fargo. Houpts also argue that the time Wells Fargo alleges was spent on the litigation far exceeds the "time and labor required" under I.R.C.P. § 54(e)(3).

An award of attorney fees is a factual determination which is reviewed for abuse of discretion. *Smith v. Mitton*, 140 Idaho 893, 901, 104 P.3d 367, 375 (2014). The amount of the award rests in the sound discretion of the court and the burden is on the disputing party to show an abuse of discretion in the award. *Anderson v. Ethington*, 103 Idaho 658, 660, 651 P.2d 923, 925 (1982). "A trial court does not abuse its discretion if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *Capstar Radio Operating Co. v. Lawrence*, 153 Idaho 411, 423, 283 P.3d 728, 740 (2012) (quoting *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008)). "[W]here issues of discretion are involved, an award of attorney fees is proper if the appellant fails to make a cogent challenge to the judge's exercise of discretion." *Andrews v. Idaho Forest Indus. Inc.*, 117 Idaho 195, 198, 786 P.2d 586, 589 (Ct. App. 1990). Further, "[T]he law is clearly settled that when awarding attorney fees in a civil action, the district court must consider I.R.C.P. 54(e)(3) factors, but need not make specific written findings of the various factors." *Pool v. Davis*, 153 Idaho 604, 607, 288 P.3d 821, 824 (2012) (quoting *Lee v. Nickerson*, 146 Idaho 5, 11, 189 P.3d 467, 473 (2008)).

The district court awarded costs and fees in two separate rulings. First, it awarded fees and costs for actions occurring before June 12, 2012, in its Memorandum Decision and Order Re: Motions for Reconsideration on February 20, 2014. Then, later, the court awarded fees and costs for actions occurring after June 12, 2012 in its Memorandum Decision and Order Re: Memorandum of Costs and Attorney Fees on June 2, 2014. In both rulings the district court explicitly stated that it "considered all of the Rule 54(e)(3) factors" in determining the award

16

amounts. The court then, also in both rulings, went on to recognize that Wells Fargo Bank was not legally entitled to foreclose on the Property until Wells Fargo Bank recorded its assignment on September 4, 2012. The court then, again in both rulings, cited to Idaho Code section 45-1505(1) and reduced Wells Fargo's fees and costs by amounts that the district court calculated as corresponding with the time Wells Fargo spent on foreclosure proceedings. Specifically, in the Order Re: Motions for Reconsideration, the district court noted that the amount was reduced based on the time "spent on foreclosure proceedings (as opposed to bankruptcy proceedings and other matters) before the assignment was recorded." In the Order Re: Attorney Fees, the district court stated that fees were reduced "so as to eliminate fees incurred by Defendants, in pursuit of nonjudicial foreclosure and in defense against the Houpts' Complaint, prior to the date the assignment was recorded."

(1)     The time and labor required under I.R.C.P. § 54(e)(3)

Houpts' argument that the time alleged by Wells Fargo far exceeds the "time and labor required" under I.R.C.P. 54(e)(3) is without merit. Aside from providing a total of hours Wells Fargo claims to have spent on the matter, Houpts present no evidence and do not cite any authority to support this argument. Rather they simply assert that Wells Fargo "far exceed the 'time and labor required' under I.R.C.P. § 54(e)(3)." Such an assertion is not a cogent challenge and therefore, fails on its face. *Utter v. Gibbins*, 137 Idaho 361, 365, 48 P.3d 1250, 1254 (2002) ("Where issues of discretion are involved, an award of attorney fees is proper if the appellant fails to make a cogent challenge to the judge's exercise of discretion." (quoting *Andrews*, 117 Idaho at 198, 786 P.2d at 589)).

(2)     Attorney Fees and Costs under the loan documents

Here, the district court correctly perceived the issue as one of discretion, and using its discretion, found that the loan documents allowed for the award of attorney fees. The court then cited Idaho Code section 45-1505(1), which requires any assignment of the trust deed to be recorded before the trustee may foreclose, and noting that Wells Fargo did not record the assignment until September 4, 2012, reduced Wells Fargo's fees and costs by the amounts corresponding to the foreclosure proceedings.

We agree with the district court that the loan documents allow for the award of attorney fees. We also agree with the district court that Wells Fargo Bank was required to record the assignment before it initiated foreclosure proceedings against Houpts. I.C. § 45-1505 ("The

17

trustee may foreclose a trust deed by advertisement and sale under this act if: (1) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee *are recorded in mortgage records* in the counties in which the property described in the deed is situated . . . .) (emphasis added).

Here, Wells Fargo Bank was not the recorded beneficiary before September 4, 2012. Thus, when Wells Fargo Bank initiated the foreclosure in 2010 it had no right to do so. *Roos v. Blecher*, 79 Idaho 473, 479, 321 P.2d 210, 213 (1958) (holding that the terms of the trust deed foreclosure statutes must be strictly complied with); *see also Sec. Pac. Fin. Corp. v. Bishop*, 109 Idaho 25, 28, 704 P.2d 357, 360 (Ct. App. 1985) (holding that a failure to comply with the foreclosure statutes invalidates a foreclosure sale). The subsequent bankruptcy and other proceedings Wells Fargo Bank sought fees for in district court all derived from Wells Fargo Bank's initial improper initiation of foreclosure. By virtue of the Stipulated Sale, Houpts do not have an action against Wells Fargo Bank for wrongful foreclosure, however, to allow Wells Fargo Bank to recover fees for proceedings that resulted from its own bad act would run "contrary to every principle of justice and right." *Boise City v. Artesian Hot & Cold Water Co.*, 4 Idaho 351, 362–63, 39 P. 562, 566 (1895) (Sullivan, J., dissenting); *see also, e.g.*, *Trees v. Kersey*, 138 Idaho 3, 13, 56 P.3d 765, 775 (2002) (noting that rights based on violation of law will never be enforced by the courts); *Nash v. Meyer*, 54 Idaho 283, 295, 31 P.2d 273, 278 (1934) (noting that the court will not support a cause of action that "appears to arise ex turpi causa, or [by] the transgression of a positive law . . . ." (internal quotation marks omitted)); *Libby v. Pelham*, 30 Idaho 614, 621, 166 P. 575, 577 (1917). Wells Fargo Bank failed to comply with section 45-1505 by initiating foreclosure without first recording its assignment. It will not now be heard to complain that it should be allowed attorney fees for proceedings that derived from its unlawful initiation of foreclosure. *McConnon v. Holden*, 35 Idaho 75, 81, 204 P. 656, 657 (1922) ("The principle of public policy is this: Ex dolo malo non oritur actio. No court will lend its aid to a man who founds his cause of action upon an immoral, or an illegal, act." (quoting *Holman v. Johnson*, (1775) Cowp. pt. 1, p. 341, 98 Eng. Reprint, 1120)). Thus, the district court should have eliminated *all* fees and costs (including those related to bankruptcy proceedings and other matters) incurred by Wells Fargo before September 4, 2012.

## C. **Attorney Fees on Appeal**

Houpts request attorney fees under Idaho Code section 12-120(3). Wells Fargo requests fees under Idaho Code section 12-120(3), Idaho Code section 12-121, and the loan documents.

Under Idaho Code section 12-120(3) attorney fees are available to the prevailing party in actions arising out of commercial transactions. Here, while the underlying transaction is commercial in nature, neither Houpts nor Wells Fargo are the overall prevailing party because while we affirmed the district court's findings that Houpts' claims for wrongful foreclosure and declaratory and injunctive relief failed, we granted Houpts' requests on the issues of the purported interest and loan balances and attorney fees and costs. Thus, neither party is the overall prevailing party nor entitled to recover under section 12-120(3).

Therefore, because there is no clear overall prevailing party, Houpts' appeal was not brought frivolously, and Wells Fargo failed to adequately articulate a request under the loan documents—each side will bear their own fees and costs.

## IV.    CONCLUSION

We affirm the district court's grant of summary judgment in favor of Wells Fargo, but remand for a determination of what effect, if any, the SBA payment and the date of default have on the interest and balance due under the Note. Further, we vacate the district court's grant of attorney fees and costs and remand for a determination of costs and fees with specific instruction to exclude *all* costs and fees incurred by Wells Fargo before September 4, 2012. Each side to bear their own fees and costs on appeal.

Chief Justice J. JONES and Justices EISMANN, W. JONES and HORTON, **CONCUR.**