(December 5, 1924.)

F. L. KOON, Respondent, v. JOHN EMPEY, Watermaster of District No. 36, O. H. OLIVE, C. H. DECAMP, and the HARRISON CANAL COMPANY, a Corporation, Appellants.

[231 Pac. 1097.]

DEEDS—CONSTRUCTION OF—INTENT OF PARTIES—PAROL EVIDENCE—ADMISSIBILITY — WATER RIGHTS — APPURTENANCE — ADVERSE POSSESSION—FINDINGS.

1. It is an elementary rule for the construction of deeds, the language of which is plain and unambiguous, that, in the absence of fraud or mistake, the intention of the parties must be ascertained from the instrument itself.

2. A water right becomes appurtenant to land to which it has been applied and upon which the water has been used for irrigation.

3. In the absence of a specific reservation to the contrary contained therein, a deed of conveyance of land, containing the usual appurtenance clause, effects a conveyance of a water right appurtenant to the land.

4. One cannot acquire title to a water right by adverse possession by using water from a stream without diminishing the supply of the owner of the right where there is no evidence of any intention or claim inconsistent with the title of the owner.

5. A trial court is not required to make findings on issues unnecessary to a determination of the cause.

APPEAL from the District Court of the Ninth Judicial District, for Bonneville County. Hon. O. R. Baum, Judge.

Suit to quiet title to a water right. Decree for plaintiff. *Affirmed.*

Harry Holden and Stevens & Downing, for Appellants.

Whether a water right is conveyed by a conveyance of real estate is determined by the intention of the parties at the time of such conveyance. (*Paddock v. Clark,* 22 Ida. 498, 126 Pac. 1053; *Russell v. Irish,* 20 Ida. 194, 118 Pac. 501; *City and County of Denver v. Brown,* 56 Colo. 216, 138 Pac. 44; *Talbot v. Joseph,* 79 Or. 308, 155 Pac. 184.)

The appellants, under the evidence of this case, were entitled to a decree upon the doctrine of adverse user for the statutory period. (*Cheda v. Southern Pac. Co.,* 22 Cal. App. 373, 134 Pac. 717; *Hudson v. Dailey,* 156 Cal. 617, 105 Pac. 748.)

The respondent, by reason of abandonment, lost whatever right he may have had in and to said water. (*North Amer. Explor. Co. v. Adams,* 104 Fed. 404, 45 C. C. A. 185; *Thorp v. McBride,* 75 Wash. 466, 135 Pac. 228.)

Identification of water claimed by respondent must be definite and certain. (*Reno v. Richards,* 32 Ida. 1, 178 Pac. 81.)

Where the pleadings supplant an issue and there is a dispute in the evidence as to the facts, the court, on request,

Argument for Respondent.

is obliged to make a finding on such issue of fact. (*Davis v. Devanney,* 7 Ida. 742, 65 Pac. 500; *Stoneburner v. Stoneburner,* 11 Ida. 603, 83 Pac. 938; *Brown v. Macey,* 13 Ida. 451, 90 Pac. 339; *Later v. Haywood,* 14 Ida. 45, 93 Pac. 374; *First Nat. Bank v. Williams,* 2 Ida. 670, 23 Pac. 552; *Frederickson v. Deep Creek Irr. Co.,* 15 Ida. 41, 96 Pac. 117; *Uhrlaub v. McMahon,* 15 Ida. 346, 97 Pac. 784.)

O. A. Johannesen, for Respondent.

One cannot acquire a prescriptive right to the use of a definite quantity of water, adverse to the claim of another, unless the person claiming such adverse right has been in actual, open, notorious, distinct, exclusive and continuous possession thereof, for the period prescribed by the statute, and has paid the taxes thereon. (*Green v. Christie,* 4 Ida. 438, 40 Pac. 54; *Bower v. Kollmeyer,* 31 Ida. 712, 175 Pac. 964; *Faulkner v. Rondoni,* 104 Cal. 140, 37 Pac. 883; *Logan v. Guichard,* 159 Cal. 592, 114 Pac. 989; *Ball v. Kehl,* 95 Cal. 606, 30 Pac. 780; 1 Cal. Jur. 584; C. S., secs. 6602, 6603.)

"Water being essential to the industrial prosperity of the state, and all agricultural development throughout the greater portion of the state depending upon its just apportionment . . . . the right to the use of any of the public waters . . . . shall become the complement of, or one of the appurtenances of the land or other thing, to which, through necessity, said water is being applied, . . . . " (C. S., secs. 5325, 5556; *Niday v. Barker,* 16 Ida. 78, 101 Pac. 254; *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81; *Paddock v. Clark,* 22 Ida. 498, 126 Pac. 1053.)

Where one sells a certain tract of land by valid deed, and in which, after describing the land, there is the expression "together with all and singular, the appurtenances thereunto belonging and appertaining," or one of similar purport, using the word "appurtenances," unless there is a specific reservation of the water right, which is in fact an appurtenance to the land, the water right will pass with the transfer of the land, the same as though it had been specifically

mentioned in the deed. (Kinney on Irrigation, 2d ed., pp. 1796, 1804; *Russell v. Irish,* 20 Ida. 194, 118 Pac. 501; *Paddock v. Clark, supra; Pendola v. Ramm,* 138 Cal. 517, 71 Pac. 624; *Simmons v. Winter,* 21 Or. 35, 28 Am. St. 727, 27 Pac. 7; Long on Irrigation, 2d ed., p. 314; C. S., sec. 5375.)

WM. E. LEE, J.—Some years prior to 1905 appellant Olive acquired from one Curd title to certain lands along the South Fork of the Snake River in what is now Madison county, together with certain water rights, including the three quarter-sections he conveyed in 1905 to respondent Koon and one Graves, respondent's grantor. In February, 1905, appellant Olive filed an answer and cross-complaint in the case of *Rexburg Irrigation Company et al. v. Teton Irrigation Canal Company et al.,* pending in the district court in and for Fremont county; and on December 16, 1910, a decree was made and filed in said suit, in which there was decreed to appellant Olive a right to 600 inches of water, with a priority date of June 1, 1889, from the Bannock-Jim Slough, and a right to 160 inches of water, with a priority date of May 1, 1905, from the same stream, for the lands now owned by respondent and two additional quarter-sections. On December 20, 1905, appellant Olive conveyed to respondent and to respondent's grantor, one Graves, the three quarter-sections of land now owned by respondent. The evidence showed that the water was necessary for the successful growing of crops on respondent's lands. The lands were cultivated by appellant Olive and his predecessors, all of whom applied water for the growing of crops. In 1918, appellant represented to the State Engineer that he was the owner of the right to the 600 inches of water, which is the basis of this litigation; that the lands upon which the water had been applied had been largely washed away and were no longer profitable for irrigation, and praying for the issuance of a certificate authorizing him to transfer the water and conduct it through the Harrison Canal for the irrigation of other lands. After one

certificate had been issued and canceled, the Department of Reclamation issued to appellant a certificate, permitting the transfer of such of the 12 second-feet of water to the Harrison Canal Company "as may have been owned by O. H. Olive on the date of his transfer . . . . to the Harrison Canal Company." Thereafter the watermaster, Empey, diverted 12 second-feet of water into the Harrison Canal.

This action was instituted to quiet respondent's title to the 600 inches of water and to enjoin the watermaster from delivering such water to anyone else. The appellants denied the allegations of the complaint and affirmatively alleged that title to the water right was acquired by appellant Olive by adverse possession. The deeds by which Olive conveyed the lands now owned by respondent did not specifically mention any water, but they contain the clause: "Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining . . . . ," which respondent contends effected the transfer of all the water appurtenant to the land. On the contrary, appellants contend that when the deeds were executed and delivered, the parties agreed that the water appurtenant to the land was to be retained by appellant Olive; and appellants attempted to establish such reservation by parol. The court refused to permit the introduction of oral evidence for such purpose, and the action of the court is assigned as error. The language of the deeds is plain and unambiguous. From the deeds the intent of the grantor to convey the lands, together with the appurtenances, plainly appears. There was no allegation of fraud or mistake in the execution of the deeds, and no fraud or mistake is claimed. It is an elementary rule for the construction of deeds, the language of which is plain and unambiguous, that, in the absence of fraud or mistake, the intention of the parties must be ascertained from the instrument itself. (8 R. C. L. 1039, sec. 95.) Parol evidence is not admissible for such purpose. (*Owen v. Henderson*, 16 Wash. 39, 58 Am. St. 17, 47 Pac. 215; 10 R. C. L., "Evidence," 1023, sec. 214, and cases cited under note 17; *Tyson v. Neill*, 8 Ida. 603, 70 Pac.

790; *Beebe v. Pioneer Bank & Trust Co.*, 34 Ida. 385, 201 Pac. 717; *Donnell v. Humphreys*, 1 Mont. 518; *Doe v. Porter*, 3 Ark. 18, 36 Am. Dec. 455.) It is where the language of a deed is ambiguous that the intent of the parties may be ascertained from the surrounding circumstances. (18 C. J. 260, sec. 217.)

Having been used to irrigate the lands now owned by respondent in 1905, and several years prior, the water became appurtenant to the land; for there can be no question that a water right becomes appurtenant to the land to which it has been applied and upon which the water has been used for irrigation (*Russell v. Irish*, 20 Ida. 194, 118 Pac. 501; *Paddock v. Clark*, 22 Ida. 498, 126 Pac. 1053); and, in the absence of any reservation to the contrary, a deed to land effects a transfer of such water and water rights as are appurtenant to the land when the conveyance is made, where the deed contains the usual "appurtenance" clause.

In *Paddock v. Clark*, 22 Ida. 498, 126 Pac. 1053, this court stated the law as follows, in the syllabus:

"Where it is shown that a water right is acquired by the owner of land by deed of conveyance, and that such water right after purchase is used by the purchaser upon the land for a beneficial use, such water right becomes an appurtenance to such land, and where after such use such land is conveyed, and in the deed of conveyance said land is described, and the deed further provides 'together with appurtenances,' such deed of conveyance not only conveys the land, but the water rights appurtenant to said land."

Mr. Kinney, in his work on Irrigation and Water Rights, at page 1796, second edition, says:

"Where there is a sale of a certain tract of land by a valid deed and in which, after describing the land, there is the expression, 'together with all and singular the appurtenances thereunto belonging and appertaining,' or one of similar purport, using the word 'appurtenances,' unless there is a specific reservation of the water right, which is in fact an appurtenance to the land, the water right will

pass with the transfer of the land the same as though it has been specifically mentioned in the deed. This follows the regular and well-settled rule of law as to the transfer of the land with 'appurtenances,' and the water right will pass with the land with the houses, barns, fences, and other appurtenances.''

The diversions made by both respondent and Olive were from the Bannock-Jim Slough, which seems to be an old channel of the river. In 1905, water flowed from the river into the slough above the lands owned by respondent and appellant Olive and flowed back into the river some distance below them. Some years after 1905, the county commissioners of Madison county constructed a dam at the head of the slough, but water, from percolation or other causes, continued to flow in the slough. The conveyance from Curd as well as the court decree referred to rights in and to the waters of Bannock-Jim Slough. At the time of and prior to the transfer to respondent and Graves, Olive was diverting water from the slough and using it by means of ditches, etc., for the surface irrigation of the lands deeded respondent and Graves. Since 1905, respondent has continued to cultivate the lands purchased from Olive but has applied the water by means of subirrigation, a system which is said to be common in that immediate vicinity. Olive claims that from 1908 to 1913 inclusive, he used 760 inches of decreed water for the irrigation of about one hundred acres of cultivated land and about fifty acres of pasture, on his ''Olive Home Ranch,'' which lies above respondent's land, by a system of subirrigation. The water was diverted from the Bannock-Jim Slough. Olive testified that 600 inches of water, with which he so irrigated his ''Olive Home Ranch,'' was the 600 inches with which this action is concerned; and he claims title to the 600 inches of water by adverse possession. Upon cross-examination Olive admitted that he did not know how much water he used, and that his system of subirrigation was the same as that used by respondent. During all the time Olive claims to have been using water adversely

to respondent, respondent was irrigating his land in the same manner and taking his water from the same stream, the Bannock-Jim Slough. Respondent's water supply, however, does not appear to have been diminished. Since respondent was entitled to certain waters of Bannock-Jim Slough and proceeded to apply such water to his land by means of subirrigation, it is difficult to understand how Olive, by a similar process of subirrigation could acquire title to the water right of respondent, by adverse possession. Olive does not here claim any unappropriated waters of Bannock-Jim Slough. His contention is that he acquired this particular right by adverse possession, by using an unascertained (and probably an unascertainable) quantity of water from the slough in the same manner and at the same time that it was so used by respondent. One cannot thus acquire title to real property. The use of the water by Olive was not adverse to respondent. There is no evidence of any claim or intention, in the use of the water by Olive, that was inconsistent with respondent's rights. This court held in *Bower v. Kollmeyer*, 31 Ida. 712, 175 Pac. 964, that,

"Where there is no proof showing that actual occupation was accompanied by a claim, or an intention, inconsistent with the title of the owner, an adverse claim based upon such occupation cannot be allowed."

Appellant complains of the refusal of the court to make certain findings. Findings are ordinarily required on all material issues, but the trial court is not required to make findings on issues not sustained by the evidence and upon questions unnecessary to the determination of the cause. The issues upon which findings were requested were not necessary to the determination of this cause by the trial court, and the court did not err in its refusal to make the requested findings. (*Brown v. Macey*, 13 Ida. 451, 90 Pac. 339; *Edmundson v. Taylor*, 17 Ida. 618, 106 Pac. 991; *Montpelier M. Co. v. City of Montpelier*, 19 Ida. 212, 113 Pac. 741; *Fouch v. Bates*, 18 Ida. 374, 110 Pac. 265; *Pleasants v. Henry*, 36 Ida. 728, 213 Pac. 565.)

Costs in the district court were taxed against appellants Olive and Decamp, and respondent will recover from them his costs on appeal.

Affirmed.

McCarthy, C. J., and Dunn, J., concur.

WILLIAM A. LEE, J., Dissenting.—The only question presented by this appeal is this: Did the trial court err in refusing to allow appellants to show by extrinsic evidence that a deed executed by appellant Olive in 1905, conveying certain premises to respondent, was not intended by either of the parties to the conveyance to include a water right with the land? At this time the suit of *Rexburg Irr. Co. et al. v. Teton Irr. Canal Co. et al.* was pending in the district court. The purpose of that action, among other things, was to have a judicial determination of the right of appellant Olive to the use of certain water which he was claiming in connection with this and other lands he owned. In 1910 the water suit was finally concluded and appellant Olive was awarded 600 inches of water which he had been using upon this land prior to the conveyance to respondent.

In the instant case appellants sought to show that by express agreement of the parties to the conveyance this water right in litigation in the water suit, whatever it might be determined to be, was reserved from the grant and was not to pass with the land, and that respondent had never in fact used the water upon the land. Respondent contends that because the deed of conveyance contained the usual appurtenance clause appellants are precluded from showing this reservation, and the trial court so held, and the majority opinion sustains this holding.

The majority opinion states that where the language of a deed is plain and unambiguous and no fraud or mistake is claimed with regard to its execution, the intent of the parties must be ascertained from the instrument itself. It then holds that if a deed contains an appurtenance clause such conveyance carries with it any water right that might have been appurtenant to such land, and that the parties

to the instrument are thereafter precluded from showing an express agreement to reserve such water right, for the reason that to permit them to do so would be varying the terms of a written instrument by parol.

The assumption that because a deed to land contains an appurtenance clause neither party to the instrument may thereafter show the actual transaction and intent of the parties, as to what was being conveyed by the grant in the way of appurtenances, begs the whole question at issue. It will not be denied that where the right to the use of water is appurtenant to land being conveyed, in the absence of an agreement to the contrary, such right will pass with the grant, with or without the appurtenance clause in the deed. But I dissent from the view of the majority that an appurtenance clause in a deed has such a fixed, certain and definite meaning when used in a deed that it precludes either party to such instrument from showing by extrinsic evidence that a right to the use of certain water upon such land did or did not, as the case may be, pass with the grant.

"It is universally recognized that a deed is not an instrument which is presumed to contain the whole contract of the parties and which cannot be supplemented by proof that other things were orally agreed on at the time." (10 R. C. L., p. 1037, sec. 229.) This text in R. C. L. is from note in *Johnson v. McClure* (Minn.), 2 Ann. Cas. 144, p. 148, where authorities from many courts are given.

Parol evidence is admissible to show that a deed absolute on its face is in fact a mortgage. (*Thompson v. Burns,* 15 Ida. 572, 99 Pac. 111; *Fountain v. Lewiston Nat. Bank,* 11 Ida. 451, 83 Pac. 505; *Bergen v. Johnson,* 21 Ida. 619, 123 Pac. 484; *Largilliere v. Zavala,* 39 Ida. 759, 230 Pac. 774.)

There are many instances where extrinsic evidence is admitted, not for the purpose of varying or contradicting the terms of a deed, but to explain the intention of the parties to the instrument. For example, "The only effect of this consideration clause in a deed is to estop the grantor from alleging that the deed was executed without consideration.

For every other purpose it is open to explanation, and may be varied by parol proof." (Devlin on Real Property and Deeds, 3d ed., vol. 2, p. 1490, sec. 823, citing *Barnum v. Childs*, 1 Sand. Ch. (3 N. Y. Super. Ct.) 58; *Jewell v. Walker*, 109 Ga. 241, 34 S. E. 337.)

The same author, at p. 1497, sec. 830, further says: "A party is estopped by his deed. He is not to be permitted to contradict it; so far as the deed is intended to pass a right, or to be the exclusive evidence of a contract, it concludes the parties to it. But the principle goes no further. A deed is not conclusive evidence of everything which it may contain. For instance, it is not the only evidence of the date of its execution; nor is its omission of a consideration conclusive evidence that none passed; nor is its acknowledgment of a particular consideration an objection to other proof of other and consistent considerations."

"Deeds are to be interpreted according to their subject matter, and such construction given to them as will carry out the intention of the parties, provided it is legally possible to do so consistently with the language of the instruments." (8 R. C. L., p. 1039, sec. 95.)

"Appurtenant. The term has no inflexible meaning, and as a noun is defined as that which belongs to another thing, but which has not belonged to it immemorially." (4 C. J., p. 1470.)

"Appurtenance. An adjunct; an appendage; an addition; that which belongs to something else; that which belongs to another thing, but which has not belonged to it immemorially." (Id., p. 1466.)

"Appurtenances. Things belonging to another thing as principal, and which pass as incident to the principal thing." (Bouvier's Law Dictionary.)

I am unable to find any support for the majority rule, either in the cases cited in support thereof or elsewhere.

The case of *Donnell v. Humphreys*, 1 Mont. 518, relied upon, is a learned discussion of the subject, but announces the rule to be directly contrary to that of the majority opinion, in the following language:

"Extrinsic evidence is admissible to show the nature and extent of an appurtenance, which passes with the principal thing granted.

"A water ditch cannot be appurtenant to another water ditch and pass as an incident thereto under a grant of the same.

"Parol contemporaneous evidence is not admissible to contradict or vary the terms of a valid written instrument, but such evidence is competent to enable the court to ascertain the intention of the parties to the deed, and make certain the language respecting its subject matter, and give effect to the deed.

"The law distinguishes between that which passes as an appurtenance, and that which passes as a part of the subject matter."

In the opinion, at p. 526, it is said:

"So extrinsic parol evidence is always admissible to give effect to a written instrument, by applying it to its proper subject matter, by proving the circumstances under which it was made, thereby enabling the court to put themselves in the place of the parties with all the information possessed by them, the better to understand the terms employed in the contract, and to arrive at the intention of the parties. (*Heldebrand v. Fogle,* 20 Ohio, 147; 1 Greenl. on Ev., sec. 277.)"

This court and all courts recognize as valid a transfer of the right to the use of water separate and apart from the land. That is, while water is generally held to be real estate in the arid states, and also to be an appurtenance to lands upon which it has been used, ordinarily the right to a severance is not questioned. (*Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19; *Hard v. Boise City Irr. Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407.) Therefore no question can arise about the right of appellant Olive to convey the land and reserve the right to the use of water which was then in litigation and not decreed until about five years thereafter.

It is not in controversy that all the water used by respondent in connection with this land, after the conveyance

to him in 1905, was water from the river or some of its tributaries that reached it by way of subirrigation. Appellant Olive had applied the water he used on this land up to the time of the conveyance to respondent in 1905 by means of surface ditches, which were not thereafter used by respondent to water this land, but all crops which he has since raised have been by subirrigation from the natural channels of the stream. This water was not subject to control and is not water that can be identified or charged to any particular appropriation, for it is a contribution made by way of seepage or subirrigation from the stream, and is not the water that was decreed to appellant Olive in 1910.

In *Paddock v. Clark,* 22 Ida. 498, 126 Pac. 1053, also relied upon to support the majority opinion, the grantor had three different classes of water rights appurtenant to the land. The deed described only two of the classes but contained the usual appurtenance clause. The court limited the water which passed with the land to that particularly described in the deed, and held that the general appurtenance clause was not under these circumstances sufficient to convey the other water right which, admittedly, was an appurtenance to the land but which had not been specifically mentioned in the deed.

In *Russell v. Irish,* 20 Ida. 194, 118 Pac. 501, it was said: "In this case the twenty acres of land was deeded together with the appurtenances. This conveyance would carry with it the water right appurtenant to the land at the time of the conveyance, unless it was specifically reserved in the *deed or it could be clearly shown that it was known to both parties that the water right was not intended to be conveyed.*"

Wiel on Water Rights, 3d ed., sec. 552, at p. 589, says: "The word 'appurtenance' does not mean 'inseparable' in this connection, as we have set forth at length in another place in discussing change of place of use. It depends on what the facts show that the parties to the sale meant to do. It is a question of intention, to be drawn from the deed or, if the deed is silent, to be drawn from the surrounding cir-

cumstances, the acts of the parties and parol evidence generally. . . . .

"Summing up, it may be said that a water-right of appropriation will not pass on a sale of land if not so intended, and it is hence not strictly accurate to say that a deed of land *per se* passes a water-right used for its irrigation; but in the absence of any evidence of such intent to the contrary it is well settled that an appurtenant water-right of appropriation passes with the land on a sale though not mentioned in the deed, nor the word 'appurtenance' used."

Under note 5 the authorities from many jurisdictions, supporting this rule, are given.

In *Arnett v. Linhart,* 21 Colo. 188, 40 Pac. 355, it is said: "Although a water right may be appurtenant to the land, it is the subject of property, and may be transferred either with or without the land. (*Strickler v. City of Colorado Springs,* 16 Colo. 61, 26 Pac. 313.) Being, therefore, a distinct subject of grant, and transferable either with or without the land, whether a deed to land conveys the water right depends upon the intention of the grantor, which is to be gathered from the express terms of the deed; or, when it is silent as to the water right, from the presumption that arises from the circumstances, and whether such right is or is not incident to and necessary to the beneficial enjoyment of the land."

In *Cooper v. Shannon,* 36 Colo. 98, 18 Am. St. Rep. 95, 85 Pac. 175, the court quotes from the Arnett Linhart case with approval.

In *Davis v. Randall,* 44 Colo. 488, 99 Pac. 322, in paragraph 3 of the syllabus, it is held that: "Whether a right passes with the land as an appurtenance depends upon the circumstances of the case, and the intention of the parties." (See, also, *Farm Investment Co. v. Gallup,* 13 Wyo. 20, 76 Pac. 917.)

It appears from the testimony offered by respondent that he has never used any particular water, but that his crops have been produced by subirrigation from the natural channels of Snake River or its tributaries, that some years after

this conveyance to him he applied to the state engineer for a permit to make a new or independent appropriation for this land.

Upon the admitted facts and circumstances of this case it should be reversed and remanded, with instructions to grant a new trial and permit the introduction of extrinsic evidence to show the real transaction between the parties.

I am authorized to say that Mr. Justice Budge concurs in the conclusion expressed in the foregoing dissenting opinion.