**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 45418**

| | | |
|---|---|---|
| In Re: CSRBA CASE NO. 49576, | ) | |
| SUBCASE NO. 91-7094. | ) | |
| ------------------------------------------------------- | ) | |
| DOUGLAS MCINTURFF and DARCY | ) | |
| MCINTURFF, | ) | Coeur d'Alene, August 2018 |
| | ) | Term |
| Claimants-Respondents, | ) | |
| | ) | Filed: August 27, 2019 |
| v. | ) | |
| | ) | Karel A. Lehrman, Clerk |
| JEFFREY C. SHIPPY, | ) | |
| | ) | |
| Objector-Appellant. | ) | |
| _____ | ) | |

Appeal from the Fifth Judicial District of the State of Idaho, Twin Falls County. Eric J. Wildman, District Judge.

The district court's partial decree is <u>affirmed</u>.

Barker, Rosholt & Simpson, LLP, Boise, for appellant Jeffrey C. Shippy. Albert P. Barker argued.

Douglas McInturff and Darcy McInturff, Cataldo, respondents *pro se*. Douglas McInturff argued.

_____

STEGNER, Justice.

This appeal arises from a disputed water right relating to the St. Joe River in Benewah County, Idaho, between a landowner and the tenants who put the water to beneficial use. The license at issue described the water right as "appurtenant to the described place of use." The landowner argues that the water right is appurtenant to his land, while the tenants contend that the right was developed and owned by their predecessors in interest and now belongs to them by virtue of their having purchased the interest. The district court ultimately adopted the Special Master's report and issued a partial decree, which listed the tenants as the owner of the license. For the reasons set out in this opinion, we affirm the district court's decree.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The disputed water right in this case first arose as a result of Jeffrey Baker (Baker) and Alexander Bruner (Bruner) creating an association, St. Maries Wild Rice Growers (St. Maries), to engage in commercial wild rice production. After St. Maries' formation, the association entered into an agreement with Aaron and Jeanne Robinson (the Robinsons) by which the association would cultivate wild rice on land owned by the Robinsons. In order to cultivate rice, the association needed water. In October 1983, St. Maries applied for a water right to irrigate the Robinsons' land. The Director of the Idaho Department of Water Resources (IDWR) approved St. Maries' permit application in November 1983 and issued it a license in 1991. The license contained a notation in its conditions section that stated: "This water right is appurtenant to the described place of use."

Following the time the water right was initially being put to beneficial use, St. Maries Wild Rice, Inc. was incorporated with Bruner as its president; however, the company was administratively dissolved by 1998. Nevertheless, the water right always remained under the name St. Maries Wild Rice Growers, and, in one form or another, St. Maries utilized the water right from the early 1980s until 2001.

On July 15, 2001, Bruner executed an agreement with Douglas and Darcy McInturff (the McInturffs) to sell the wild rice harvesting business and equipment. This agreement included the disputed water right as part of the sale, noting that it was "valuable and absolutely essential to the operation." The McInturffs, as the owners of St. Joe River Wild Rice Company, then took over cultivation of the land described in the water license. Four years later, the McInturffs submitted a notice of change in water right ownership to IDWR as required by Idaho Code section 42-248. The Director of the IDWR recorded the change in ownership of the water right to the McInturffs in December 2006.

During this time, the land on which the rice was harvested also changed owners. While the Robinsons initially owned the land on which St. Maries used the water, they later conveyed the land to their son Jeffery Shippy (Shippy). The property was transferred in four separate conveyances in 1993, 1994, 1998, and 1999. In 2010, Shippy conveyed the land to Cedar Creek Ranch, LLC (Cedar Creek), with Shippy as its sole managing member. Cedar Creek is the current owner of the land on which the rice was cultivated. Shippy and Cedar Creek never received notice of the change in ownership of the water license to the McInturffs in 2006 as

2

communications occurred only between IDWR and the McInturffs. Meanwhile, Shippy contends that Robinson had owned the "appurtenant" water right by being the landowner, and, consequently, that the right passed with the land.

In February of 2015, the McInturffs filed a notice of claim within the Coeur d'Alene-Spokane River Basin Adjudication (CSRBA). The Director recommended the McInturffs be recognized as owners of the water right. Shippy timely filed an objection and a separate claim, arguing that he should be the sole owner of the water right. Following an investigation, the Director's Report explained that he was unable to determine who owned the water right, and therefore recommended it go to both Shippy and the McInturffs. The McInturffs filed an objection, and the parties went to trial before a Special Master on August 3, 2016. Following the trial, the Special Master determined that the McInturffs owned the water right. On November 28, 2016, Shippy filed a motion to alter or amend the Special Master's report and recommendation, which the Special Master denied. Shippy then challenged the Special Master's ownership determination in the district court. The district court adopted the Special Master's recommendation that the McInturffs owned the water right and entered a partial decree reflecting that decision. Shippy timely appealed. Following oral arguments, this Court ordered supplemental briefing to address a question regarding the identity of the real party in interest in the case.

## II.   STANDARD OF REVIEW

The Special Master's legal conclusions that the district court adopts are considered to be the district court's conclusions. *United States v. Black Canyon Irrigation Dist.*, 163 Idaho 54, 59, 408 P.3d 52, 57 (2017). This Court freely reviews the district court's legal conclusions. *Id.* In addition, this Court exercises free review in determining whether an ambiguity exists in a legal instrument. *Rangen, Inc. v. Idaho Dep't of Water Res.*, 159 Idaho 798, 807, 367 P.3d 193, 202 (2016).

"Findings of fact . . . must not be set aside unless clearly erroneous[.]" I.R.C.P 52(a)(7). A trial court's findings of fact are not clearly erroneous "if the findings are supported by substantial and competent evidence." *PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 767, 291 P.3d 442, 450 (2012) (quoting *Senator, Inc. v. Ada Cty. Bd. of Equalization*, 138 Idaho 566, 569, 67 P.3d 45, 48 (2003)).

### III.   ANALYSIS

**A.      Shippy and Cedar Creek are both real parties in interest.**

Before we can address the issues raised on appeal, we must determine who is the real party in interest. Shippy contends that he and Cedar Creek are both real parties in interest in this case because Cedar Creek owns the land to which the contested water right is appurtenant. Because this appeal was only brought by Shippy, the Court requested additional briefing concerning who the real parties in interest are. Cedar Creek subsequently filed a request to ratify, join, or be substituted into this action. We agree with Shippy that both parties are real parties in interest and grant Cedar Creek's motion to join pursuant to Idaho Rule of Civil Procedure 17(3) to afford complete relief to the parties.

Standing is essential to justiciability. Therefore, it is an issue that may be raised at any time, including for the first time on appeal or *sua sponte* by this Court. *Houpt v. Wells Fargo Bank, Nat'l Ass'n*, 160 Idaho 181, 186, 370 P.3d 384, 389 (2016). Idaho Rule of Civil Procedure 17(a) requires an action to be "prosecuted in the name of the real party in interest." We have interpreted Rule 17 liberally to "further the policy favoring the just resolution of actions—providing litigants their day in court." *Houpt*, 160 Idaho at 187, 370 P.3d at 390 (citation omitted). Thus, Rule 17 "prevent[s] forfeiture when determination of the proper party is difficult or when an understandable mistake has been made in selecting the party plaintiff." *Id.* (citation omitted).

Both Cedar Creek and Shippy are real parties in interest. First, Cedar Creek is a real party in interest because it owns the land to which the water right at issue is appurtenant. Though Cedar Creek was not originally a party on this appeal, we grant its motion to join this action to best afford relief.

Second, Shippy is still a real party in interest because he was a proper claimant in the CSRBA. *See* I.C. §§ 42-1401A(1), 1412. As we held in *Bray v. Pioneer Irrigation District*, any claimant has standing to file an objection or response to a water right reported in the director's report. 144 Idaho 116, 118, 157 P.3d 610, 612 (2007). Injury is not required to object to a water right. *Id.* Accordingly, Shippy has standing to object to the McInturffs' claim and argue that Cedar Creek is the rightful owner of the water right, both of which he has done.

Nevertheless, the ultimate contest over the water right belongs to Cedar Creek and the McInturffs. While Shippy is a claimant with standing to object to the water right's ownership, he cannot argue that he is personally entitled to the water right when Cedar Creek owns the land.

**B.     The district court did not err in rejecting Shippy's claim to the water right license.**

1. The district court correctly determined that Shippy's objection was an impermissible collateral attack.

The district court found that it was an impermissible collateral attack for Shippy to object to the determination of ownership made during the licensing process, which should have been made at the time the license was issued in 1991.

> [Shippy and Cedar Creek] presented evidence at trial that it was originally intended for the water right to be held by Aaron Robinson and not St. Maries Wild Rice Growers. Tr., 136–137. However, if [Shippy and Cedar Creek] or their predecessors believed the license was owned by Robinson, this proceeding is not the proper time or place to raise that argument. If the Director erred in vesting ownership of the license in St. Maries Wild Rice Growers, the Objectors or their predecessors were required to timely raise the issue before the Department, exhaust their administrative remedies, and if necessary, seek judicial review.

(Citing I.C. § 67-5271.)

We have previously barred collateral attacks because of their ability to create uncertainty and to undermine water adjudications. *City of Blackfoot v. Spackman*, 162 Idaho 302, 308, 396 P.3d 1184, 1190 (2017); *Idaho Ground Water v. Idaho Dep't of Water Res.*, 160 Idaho 119, 128, 369 P.3d 897, 906 (2016); *Rangen, Inc.*, 159 Idaho at 805–07, 367 P.3d at 200–02. After all, "[f]inality in water rights is essential." *State v. Nelson*, 131 Idaho 12, 16, 951 P.2d 943, 947 (1998). Idaho adopted its statutory framework regarding water rights because the "future growth and development of the state is dependent upon effective management and efficient use of the state's water resources." I.C. § 42-241. Efficient administration and finality of decisions are crucial to "the proper planning for the future use of the state's water resources." *See id.*

Regarding the collateral attack on the water license, the district court relied on Idaho Code section 67-5271. That statute states, "A person is not entitled to judicial review of an agency action until that person has exhausted all administrative remedies[.]" It is undisputed that neither the Robinsons, nor Shippy, nor Cedar Creek contested the water right's listed owner—first the Association, then the McInturffs—with the IDWR. Instead, when Shippy eventually

5

contested ownership in March 2015, it was as part of the CSRBA adjudication. The CSRBA was not the time or place for such an objection.

Instead, as the district court noted, the landowners "sat on their rights for over thirty years without action." In October 1983, St. Maries applied for a water right to grow and harvest wild rice on Robinson's property. The Director of the IDWR approved the permit application a month later in November 1983. The Director of the Department then issued St. Maries a license for the water in 1991 after conducting a site visit. Ten years later in 2001, St. Maries sold its interest in the water right to the McInturffs. The McInturffs appropriated the water to a beneficial use continuously from 2001 until 2014. In 2006, the Director of the IDWR recognized and recorded the McInturffs as the owners of the water right under the license. Shippy's predecessor in interest (Robinson), Shippy, and Shippy's successor in interest (Cedar Creek) were all paid by the tenants (St. Maries and the McInturffs) for their corresponding use of the land. The time for Shippy or his predecessor in interest to have challenged these earlier determinations came and went long before the CSRBA.

Neither Robinson nor Shippy ever asserted a right to the water before the CSRBA arose and that fact is clear from the record.

> Q. [By Douglas McInturff] Have you ever exercised any legal action to have anybody stopped for trespassing to pump the water and harvest the land?
> A. [By Jeffrey Shippy] No.
> Q. How did you become aware of this water right action?
> A. I became aware of it probably around the first of last year. I wasn't aware that the water right was not –
> Q. That was when.
> A. I guess I started to become aware of it as water rights were started being talked about in the Coeur d'Alene-Spokane Adjudication process. I never thought too awful much about it because up to that point I always knew that Aaron [Robinson] had water rights to that property. So I never really thought about it.
> I found out at the first, sometime in the first couple of months of 2015 that that wasn't necessarily so and made the decision to look into it a little bit more and found out that he did not have water rights to his property.
> Q. That he did not have the water right?
> A. Well, the water right license was issued to –
> Q. Did he have water right licenses in his name?
> A. No.

6

The district court below concluded, "the record reveals that neither the Objectors [Shippy and Cedar Creek] nor their predecessors [the Robinsons] asserted any ownership in the water right until Shippy filed the competing claim in 2015." The court went on to find:

> [A]t no time did either the Objectors or their predecessors assert ownership via the filing of notice of change of ownership with the Department as required by Idaho law. I.C. § 42-428. Nor did they contest the McInturffs' open use of water under the right from 2001 to 2014. Had the Objectors or their predecessors timely asserted their alleged ownership interest as required by law, the issue of ownership could have been addressed in a timely manner on a fresh record. Instead, the Objectors sat on their rights for over thirty years without action.

The fact that Shippy and his predecessors in interest did nothing to assert a claim to the water at issue is uncontradicted. Shippy acknowledged as much on the witness stand.

Not only has Shippy done nothing, the McInturffs have diligently preserved their right to the water as the district court found.

> Unlike the Objectors, the record establishes the McInturffs have diverted and beneficially used water under the subject water [right]. The McInturffs' use began following the acquisition of the water right in 2001 under the sale agreement. Beginning that year and up until 2014, the McInturffs cultivated the place of use identified in the license with water available under the water right. The Objectors do not dispute the McInturffs' beneficial use. Far from it. The Objectors were complacent with the use and had a business arrangement with the McInturffs wherein Shippy was paid in the amount of "one-third of the share" of the harvest for allowing the McInturffs to cultivate the place of use.

These are findings of fact drawn by the district court acting in its capacity as the factfinder. We owe deference to the district court. I.R.C.P. 52(a)(7); *PacifiCorp*, 153 Idaho at 767, 291 P.3d at 450. We are not a fact-finding court. More to the point, the district court's findings of fact are amply supported by this record.

Accordingly, Shippy and Cedar Creek failed to timely assert their ownership interest and the objections rise to the level of an impermissible collateral attack at this juncture.

Cedar Creek claims that it did not assert its right earlier as it believed that it owned the water right due to the ownership of the land. However, ignorance of the law is not a defense, nor is it an excuse for Shippy's untimely challenge to the water right. *See State v. Fox*, 124 Idaho 924, 926, 866 P.2d 181, 183 (1993). As explained below, land ownership is not a requirement to obtain a water right. Thus, the fact that Cedar Creek believed it owned the water right because it owned the property upon which the water right was used does not excuse Shippy and Cedar

Creek's tardiness in asserting their rights. In fact, such a belief should have prompted them to investigate or undertake proper procedure to perfect their claimed right.

Accordingly, the district court correctly determined that Cedar Creek's objection was an impermissible attack and that Cedar Creek had failed to timely assert its rights.

> 2. The district court correctly determined Cedar Creek was not the owner of the disputed water right because the license was unambiguous and neither Shippy nor Cedar Creek put the water to a beneficial use.

> > a) *The district court did not err when it determined the water license was unambiguous.*

The disputed water license states: "This water right is appurtenant to the described place of use." Shippy and Cedar Creek argue that this language vests ownership of the water right with the owner of the land, Cedar Creek. However, the district court found that the license was clear and unambiguous and recognized a bifurcation between the ownership of the land and ownership of the water right used on that land.

"Whether an ambiguity exists in a legal instrument is a question of law, over which this Court exercises free review." *Knipe Land Co. v. Robertson*, 151 Idaho 449, 455, 259 P.3d 595, 601 (2011) (citation omitted). "An unambiguous [legal instrument] will be given its plain meaning." *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005).

This Court has held that "water may be appropriated for beneficial use on land not owned by the appropriator, and this water right becomes the property of the appropriator." *First Sec. Bank of Blackfoot v. State*, 49 Idaho 740, 746, 291 P. 1064, 1066 (1930). Further, in *Blackfoot*, we wrote, "If the water right was initiated by the lessee, the right is the lessee's property, unless the lessee was acting as agent of the owner." *Id.* Thus, a tenant who appropriates water even with the knowledge or acquiescence of a landlord has a separate and distinct right to the water from that of the landlord so long as the tenant is not acting as the landlord's agent. *See id.*; *see also Joyce Livestock Co. v. United States*, 144 Idaho 1, 18, 156 P.3d 502, 519 (2007).

Here, the language of the license is unambiguous and originally identified St. Maries as the owner of the water right. As noted above, land ownership is not a requirement to obtain a water right. Instead, a valid water right can arise where the appropriator has lawful access. *Lemmon v. Hardy*, 95 Idaho 778, 780–81, 519 P.2d 1168, 1170–71 (1974). Generally, water

8

"appropriated for beneficial use on land not owned by the appropriator . . . becomes the property of the appropriator." *Blackfoot*, 49 Idaho at 746, 291 P. at 1066.

Here, the district court accurately noted, "Idaho law recognizes there may be a bifurcation between ownership of the land and of the water right used in the land." As the district court found, the license plainly identified St. Maries as the owner of the license. Neither St. Maries nor its successors ever owned the land identified in the water license as the place of use. As a result, the bifurcation between ownership of the land and of the water right used on the land has existed from the commencement of the appropriation. Accordingly, the remark—"This water right is appurtenant to the described place of use"—does not vest ownership of the water right with the landowner. Rather, the remark simply clarifies that the *use* of the water right is tied to (or in the language of the license "appurtenant to") the described place of use, i.e., Cedar Creek's land.

> b) *The district court did not err when it concluded that Cedar Creek could not own the water right because it did not put the water to beneficial use.*

The district court found that Cedar Creek's ownership claim failed because neither Shippy nor Cedar Creek put the water under the contested water right to beneficial use. The record supports this conclusion.

In Idaho, it is "a well-settled rule of public policy that the right to the use of the public water of the state can only be claimed where it is applied to a beneficial use in the manner required by law." *United States v. Pioneer Irrigation Dist.*, 144 Idaho 106, 110, 157 P.3d 600, 604 (2007) (quoting *Albrethsen v. Wood River Land Co.*, 40 Idaho 49, 60, 231 P. 418, 422 (1924)). This is known as the doctrine of prior appropriation: the first appropriator to divert the water and put it to beneficial use has a superior right to use the water. *Joyce Livestock Co.*, 144 Idaho at 7–8, 156 P.3d at 508–09. Thus, an appropriator who was first in time is first in right. *Id.* These constitutionally obtained water rights are still recognized and protected. *Id.*

Since 1971, Idaho has also implemented a statutory process to obtain surface water rights. *Pioneer Irrigation Dist.*, 144 Idaho at 110, 157 P.3d at 604. Though the statute still recognizes the traditional diversions of state waters for useful or beneficial purposes, it imposes the additional requirements of filing an application with the IDWR, obtaining a permit, and then perfecting the water right by obtaining a license. I.C. §§ 42-101, 42-201. To have a valid water right in Idaho, both the constitutional and statutory methods of appropriation require the

appropriator to apply the water to a beneficial use. *Pioneer Irrigation Dist.*, 144 Idaho at 110, 157 P.3d at 604. A license will not issue until there is proof of a beneficial use. *Id.*

As noted, "[i]f the water right was initiated by the lessee, the right is the lessee's property, unless the lessee was acting as agent of the owner." *Blackfoot*, 49 Idaho at 746, 291 P. at 1066. Thus, so long as the tenant is not acting as the landlord's agent, the tenant may acquire its own distinct and separate water right. *Id.* Merely allowing the tenant to use the water on land owned by the landlord does not equate to the landlord putting the water to beneficial use. *See id.*

Here, there is no evidence that Cedar Creek or its predecessors in interest ever established an agency relationship with the McInturffs or their predecessors in interest. There is no evidence in any leasing agreement that would have created an agency relationship. In fact, Cedar Creek contends that no lease ever existed. The only action by the landowner was to allow St. Maries, and later the McInturffs, to use the land to cultivate wild rice. Merely allowing the tenant to use the water on the land is not enough to establish an agency relationship between landowner and tenant. Therefore, it cannot be said that St. Maries or the McInturffs put the water to beneficial use on behalf of Cedar Creek. Instead, the record reflects that the right to the water originated from the application filed by St. Maries. Only St. Maries and its successors ever put the water to beneficial use, and they only did so for the benefit of their wild rice harvesting businesses. There is nothing in the record to suggest that St. Maries or the McInturffs were acting on behalf of Cedar Creek.

Therefore, due to the lack of any evidence that Cedar Creek put the water to beneficial use, it has failed to meet its burden of persuasion on that element. Accordingly, the failure to put the water to beneficial use is fatal to Cedar Creek's claim of ownership, and the district court correctly determined that Cedar Creek did not own the water right.

**C.     The district court correctly determined that it did not have jurisdiction to review Cedar Creek's objection to the change in ownership by the Director of the IDWR.**

In addition, the district court found it was not the proper forum to attack the propriety of the Director's determination to recognize and record the McInturffs as owners of the water right in 2006. The district court held that pursuant to Idaho Code section 42-1401D it did not have jurisdiction to consider Shippy's challenge to the McInturffs' application. That statute reads as follows:

> 42-1401D. JURISDICTIONAL LIMITATION. Review of an agency action of the department of water resources, which is subject to judicial review or declaratory

10

judgment under the provisions of chapter 52, title 67, Idaho Code, shall not be heard in any water rights adjudication proceeding commenced under this chapter. Venue and jurisdiction over any such action pending on the effective date of this section, or initiated subsequent thereto, shall be in the district court as authorized under the provisions of section 67-5272, Idaho Code, without regard to any other provision of law.

I.C. § 42-1401D.

The district court correctly concluded this statute deprived it of jurisdiction to review an agency decision of the IDWR that was subject to judicial review under the Idaho Administrative Procedures Act (IDAPA). If Cedar Creek and Shippy were dissatisfied with the Director's determinations of ownership, any objection to that determination should have been made with the agency. *See* I.C. §§ 42-1701A, 67-5271. Therefore, Shippy and Cedar Creek have not exhausted their administrative remedies and may not raise the issue for the first time in the CSRBA. Instead, the claim should have been brought in front of the Director during the change in ownership determinations.

It is of note that Cedar Creek argues that its objection was delayed because it was not given notice of the change of ownership. However, Cedar Creek was not entitled to notice under Idaho Code section 42-248. That statute provides:

The director of the department of water resources will be deemed to have provided notice concerning any action by the director affecting a water right or claim if a notice of the action is mailed to the address and owner of the water right shown in the records of the department of water resources at the time of mailing the notice.

I.C. § 42-248(3). Here, however, neither Cedar Creek nor Shippy were the prior owners of the water right. While it is true that the Special Master found there was no evidence that notice had been "mailed to the owner of record," the Special Master indicated that St. Maries was the owner of record, not Shippy or Cedar Creek. Therefore, Cedar Creek would not have received notice anyway.

Accordingly, the district court correctly determined that it did not have jurisdiction to adjudicate Cedar Creek's objection to the change in ownership determination.

**D.      Shippy and Cedar Creek are not entitled to attorney fees.**

Shippy requests attorney fees pursuant to Idaho Code section 12-121 and Idaho Appellate Rules 40 and 41. As for section 12-121 and I.A.R. 40 and 41, attorney fees are only awarded to

the prevailing party. As Shippy and Cedar Creek are not the prevailing parties, they are not entitled to any attorney fees.

Shippy further requests attorney fees under I.A.R. 11.2, claiming the McInturffs pursued this action in bad faith in order to run up Shippy's fees. Their contention stems from a contentious letter written to Shippy by Darcy McInturff on July 18, 2017. In it, Ms. McInturff claims that Shippy's actions in retaining counsel to pursue this water right "has served only to pad the pockets" of the attorneys and demonstrates Shippy's "absolute stupidity." She also claimed that Mr. McInturff never intended to pursue the water right until they received a letter from Shippy's attorney, at which point the goal became to prolong the legal battle in order to "take delight in the outpouring of cash" Shippy would have to expend. While the McInturffs do not deny the letter Ms. McInturff sent to Shippy, they claim it was merely spiteful, "angry venting" following a long legal battle.

The district court noted that, though the letter did not affect the case's merits or the outcome, "[a]n admission that the process is being used for nothing more than to needlessly raise the cost of litigation for a party that has chosen to be represented by counsel is alarming." In Idaho, "it is well-established that courts will apply the same standards and rules whether or not a party is represented by an attorney and that pro se litigants must follow the same rules." *Bettweiser v. N.Y. Irrigation Dist.*, 154 Idaho 317, 322, 297 P.3d 1134, 1139 (2013).

This Court shares the concern of the district court regarding this letter. Idaho's courts do not exist for litigants to elevate annoyance, grudges, or vendettas to legal action improperly. This letter was certainly ill-advised and, as the McInturffs admit, spiteful. However, given the meritorious case the McInturffs presented on a water right they have beneficially used for well over a decade, this Court determines that imposing sanctions would not be appropriate.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's partial decree. We decline to award attorney fees. Costs are awarded to the McInturffs.

Chief Justice BURDICK and Justice BEVAN CONCUR.

BRODY, Justice, concurring in part and dissenting in part.

While I concur in Part A of the majority's analysis, I believe that the water right's language created an ambiguity.

12

The majority concludes that the district court did not err in finding the license unambiguous. However, in reviewing the record, even the Director of IDWR—who is charged with investigating claims and interpreting the Department's licenses—could not determine to whom the right belonged. As a result, the Director's Report recommended that it be decreed to both parties. Yet the district court found the license unambiguous even though the "IDWR Director's Report constitutes *prima facie* evidence of the nature and extent of water rights acquired under state law." *A & B Irrigation Dist. v. Aberdeen-Am. Falls Ground Water Dist.*, 141 Idaho 746, 750, 118 P.3d 78, 82 (2005).

As the Director saw, this water right's language and history is anything but plain. The disputed water license states: "This water right is appurtenant to the described place of use." Appurtenant means "annexed to a more important thing." *Appurtenant*, **BLACK'S LAW DICTIONARY** (8th Ed. 2004). While the license's remark itself is unusual, the idea is not: water rights are often tied to the land, both as a specified place of use and as appurtenant rights conveyed with the property. *See* I.C. § 42-101.

Similar to the law of easements, a water right passes with the property to which it is appurtenant—possibly through an appurtenance clause, but even if not mentioned in the deed at all—unless there is an intention to the contrary. *Joyce Livestock Co. v. U.S.*, 144 Idaho 1, 13, 156 P.3d 502, 514 (2007); *Bothwell v. Keefer*, 53 Idaho 658, 662, 27 P.2d 65, 66 (1933); *Koon v. Empey*, 40 Idaho 6, 11 231 P. 1097, 1098–99 (1924). In fact, while a water right may be separated from the property, it is more often a natural appurtenance tied to the land of its permitted use. *Compare First Sec. Bank of Blackfoot*, 49 Idaho at 746, 291 P. at 1066 ("a water right is not necessarily appurtenant to the land on which it is used and may be separated from it."), *with Mullinix v. Killgore's Salmon River Fruit Co.*, 158 Idaho 269, 277, 346 P.3d 286, 294 (2015) ("a water right is appurtenant to the land and transfers with the conveyance of the land."); *Joyce Livestock Co.*, 144 Idaho at 14, 156 P.3d at 515 ("the inquiry is whether the water rights were expressly reserved in the deed conveying the land or whether there is clear evidence that the parties intended that the grantor would reserve them."); *Bothwell v. Keefer*, 53 Idaho 658, 662, 27 P.2d 65, 67 (1933) ("a water right passes with the realty to which it is appurtenant unless there is intention to the contrary."); *Koon*, 40 Idaho at 11, 231 P. at 1098 ("there can be no question that a water right becomes appurtenant to the land to which it has been applied and upon which the water has been used for irrigation.").

While this Court's holding in *First Security Bank of Blackfoot v. State* would generally apply to disputed water rights between a landlord and tenant, this case is unique because of the additional language in note two of the license: "This water right is appurtenant to the described place of use." I believe this notation created ambiguity in the license's ownership and purpose, and moves the case outside a *First Security Bank* analysis. Said simply, if note two of the license did not exist, this Court's holding in *First Security Bank* would dictate that the water right belongs to McInturff. As it stands, however, the note could reasonably be interpreted in two different ways. It could, as the district court concluded, be interpreted merely as a clarification that the use of the water is tied to a specific place (meaning that McInturff will have to apply to transfer it elsewhere). Or, alternatively, as Cedar Creek argues, it could reasonably be interpreted to mean that even though the tenant was putting the water to beneficial use, the water right would remain with the landowner's land.

But this ambiguity has an even longer history. The record shows a disagreement between St. Maries' own associates, Bruner and Baker, with each believing a separate party owned the water right. Bruner entered into a purchase and sale agreement with McInturff which specifically referenced the water right at issue as an asset that was being transferred. Baker, his partner, testified at the trial before the Special Master that the water right belonged to Cedar Creek. Accordingly, I think the majority misapplies the facts and existing law to conclude that the license is plain and unambiguous.

In addition, this ambiguity created another crucial issue of notice and timeliness. The majority concludes that Shippy sat on his rights and that his objection now is an impermissible collateral attack. I disagree.

As the majority noted, Cedar Creek never received notice of the ownership change, nor would it have under the CSRBA's statutory requirements. While I agree that the need for finality is imperative, the adjudication process must also allow for claimants who had no notice of a right to challenge an ambiguous license and establish their ownership right. For in requiring finality we must also recognize the property right protections due to a water license owner. *See State v. Nelson*, 131 Idaho 12, 16, 951 P.2d 943, 947 (1998). Here, neither Shippy nor Cedar Creek had notice from IDWR or McInturff of the 2006 water right transfer, and were thus unaware that the water right was changing owners. Indeed, Shippy believed the right belonged to Cedar Creek because of the license's language and a water right's natural connection to the property it

14

benefits. As the owner of the irrigated land, Cedar Creek believed the right accompanied the property. The appurtenance language of the license itself buoyed Shippy's and Cedar Creek's beliefs: for if the license truly is appurtenant to the land, then it would have transferred to Shippy via the appurtenance clause in Robinson's property deed and then to Cedar Creek when Shippy conveyed the property to the LLC. Only in 2015—when McInturff filed his notice of claim with the CSRBA—did Shippy finally discover that the water right was not officially in Cedar Creek's possession.

"Procedural due process requires that there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions." *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999) (citation omitted). Shippy and Cedar Creek are not reinterpreting the water license, nor are they amending it; they are trying to prove the right's original ownership at issuance, which was never established and ultimately confounded the Director of the IDWR. Such a license must be contestable lest we allow water rights to be usurped without notice to true owners.

While this is an unusual situation with a unique notation in the water right, I cannot agree with the majority's decision to label Cedar Creek's pursuit of its right as a collateral attack when it—and its successors—reasonably believed the right was safely attached to the land. Therefore I respectfully dissent from the majority's opinion.

Justice HORTON CONCURS.

15