BRODY, Justice, concurring in part and dissenting in part.
While I concur in Part A of the majority's analysis, I believe that the water right's language created an ambiguity.
The majority concludes that the district court did not err in finding the license unambiguous. However, in reviewing the record, even the Director of IDWR-who is charged with investigating claims and interpreting the Department's licenses-could not determine to whom the right belonged. As a result, the Director's Report recommended that it be decreed to both parties. Yet the district court found the license unambiguous even though the "IDWR Director's Report constitutes prima facie evidence of the nature and extent of water rights acquired *948 under state law." A & B Irrigation Dist. v. Aberdeen-Am. Falls Ground Water Dist., 141 Idaho 746, 750, 118 P.3d 78, 82 (2005).
As the Director saw, this water right's language and history is anything but plain. The disputed water license states: "This water right is appurtenant to the described place of use." Appurtenant means "annexed to a more important thing." Appurtenant, BLACK'S LAW DICTIONARY (8th Ed. 2004). While the license's remark itself is unusual, the idea is not: water rights are often tied to the land, both as a specified place of use and as appurtenant rights conveyed with the property. See I.C. § 42-101.
Similar to the law of easements, a water right passes with the property to which it is appurtenant-possibly through an appurtenance clause, but even if not mentioned in the deed at all-unless there is an intention to the contrary. Joyce Livestock Co. v. U.S., 144 Idaho 1, 13, 156 P.3d 502, 514 (2007) ; Bothwell v. Keefer , 53 Idaho 658, 662, 27 P.2d 65, 66 (1933) ; Koon v. Empey, 40 Idaho 6, 11, 231 P. 1097, 1098-99 (1924). In fact, while a water right may be separated from the property, it is more often a natural appurtenance tied to the land of its permitted use. Compare First Sec. Bank of Blackfoot, 49 Idaho at 746, 291 P. at 1066 ("a water right is not necessarily appurtenant to the land on which it is used and may be separated from it."), with Mullinix v. Killgore's Salmon River Fruit Co., 158 Idaho 269, 277, 346 P.3d 286, 294 (2015) ("a water right is appurtenant to the land and transfers with the conveyance of the land."); Joyce Livestock Co., 144 Idaho at 14, 156 P.3d at 515 ("the inquiry is whether the water rights were expressly reserved in the deed conveying the land or whether there is clear evidence that the parties intended that the grantor would reserve them."); Bothwell v. Keefer, 53 Idaho 658, 662, 27 P.2d 65, 67 (1933) ("a water right passes with the realty to which it is appurtenant unless there is intention to the contrary."); Koon, 40 Idaho at 11, 231 P. at 1098 ("there can be no question that a water right becomes appurtenant to the land to which it has been applied and upon which the water has been used for irrigation.").
While this Court's holding in First Security Bank of Blackfoot v. State would generally apply to disputed water rights between a landlord and tenant, this case is unique because of the additional language in note two of the license: "This water right is appurtenant to the described place of use." I believe this notation created ambiguity in the license's ownership and purpose, and moves the case outside a First Security Bank analysis. Said simply, if note two of the license did not exist, this Court's holding in First Security Bank would dictate that the water right belongs to McInturff. As it stands, however, the note could reasonably be interpreted in two different ways. It could, as the district court concluded, be interpreted merely as a clarification that the use of the water is tied to a specific place (meaning that McInturff will have to apply to transfer it elsewhere). Or, alternatively, as Cedar Creek argues, it could reasonably be interpreted to mean that even though the tenant was putting the water to beneficial use, the water right would remain with the landowner's land.
But this ambiguity has an even longer history. The record shows a disagreement between St. Maries' own associates, Bruner and Baker, with each believing a separate party owned the water right. Bruner entered into a purchase and sale agreement with Mclnturff which specifically referenced the water right at issue as an asset that was being transferred. Baker, his partner, testified at the trial before the Special Master that the water right belonged to Cedar Creek. Accordingly, I think the majority misapplies the facts and existing law to conclude that the license is plain and unambiguous.
In addition, this ambiguity created another crucial issue of notice and timeliness. The majority concludes that Shippy sat on his rights and that his objection now is an impermissible collateral attack. I disagree.
As the majority noted, Cedar Creek never received notice of the ownership change, nor would it have under the CSRBA's statutory requirements. While I agree that the need for finality is imperative, the adjudication process must also allow for claimants who had no notice of a right to challenge an ambiguous license and establish their ownership right. For in requiring finality we must *949 also recognize the property right protections due to a water license owner. See State v. Nelson, 131 Idaho 12, 16, 951 P.2d 943, 947 (1998). Here, neither Shippy nor Cedar Creek had notice from IDWR or McInturff of the 2006 water right transfer, and were thus unaware that the water right was changing owners. Indeed, Shippy believed the right belonged to Cedar Creek because of the license's language and a water right's natural connection to the property it benefits. As the owner of the irrigated land, Cedar Creek believed the right accompanied the property. The appurtenance language of the license itself buoyed Shippy's and Cedar Creek's beliefs: for if the license truly is appurtenant to the land, then it would have transferred to Shippy via the appurtenance clause in Robinson's property deed and then to Cedar Creek when Shippy conveyed the property to the LLC. Only in 2015-when Mclnturff filed his notice of claim with the CSRBA-did Shippy finally discover that the water right was not officially in Cedar Creek's possession.
"Procedural due process requires that there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions." Aberdeen-Springfield Canal Co. v. Peiper, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999) (citation omitted). Shippy and Cedar Creek are not reinterpreting the water license, nor are they amending it; they are trying to prove the right's original ownership at issuance, which was never established and ultimately confounded the Director of the IDWR. Such a license must be contestable lest we allow water rights to be usurped without notice to true owners.
While this is an unusual situation with a unique notation in the water right, I cannot agree with the majority's decision to label Cedar Creek's pursuit of its right as a collateral attack when it-and its successors-reasonably believed the right was safely attached to the land. Therefore I respectfully dissent from the majority's opinion.
Justice HORTON concurs.